Stephenson, J.
 

 There is just one question here, Is there a scintilla of evidence in this case entitling Dr. Finley to the judgment against Harry Tille, husband of Grace Tille?
 

 In their briefs, counsel have quoted excerpts from the record, and they are correct. Medical services and attention are necessaries. In years gone by, the courts of this and other states were inclined to hold that the marriage relation created an unconditional liability on the part of the husband for necessaries furnished the wife, and at that time there was strong reason why the courts should so hold. In those days the wife was mother, matron and maid. She was likewise shackled to her husband by the common law. If she performed the duties required of her in her triune capacity, she had no independent earning power, and her right to her keep was absolute. The law did not go beyond the obligation imposed by the marriage contract in fixing the liability, and the duty of the husband to furnish the wife with the necessaries of life was none the less absolute.
 

 As women gradually entered man’s former sphere, the law in its wisdom relaxed its requirements so far as the man and husband was concerned. It shifted some of the responsibility from his shoulders to the shoulders of the woman and wife..
 

 In Ohio this gradual process of alleviation has
 
 *580
 
 changed the husband’s duty to furnish his wife necessaries from an unconditional to a conditional duty. Consequently, the liability arising from a breach of this duty is conditional.
 

 It is unnecessary to cite authorities in support of this contention. Reference to our statutes which treat with the relation of husband and wife is all-sufficient.
 

 From the statement of counsel, the courts below seemed to tie to the proposition that Dr. Finley knew that Grace Tille had a husband when the medical services were rendered. The record does not fully bear out this contention, but if they had such inclination, there was a reason for it.
 

 In construing the opinion in the case of
 
 Attorneys Service Co.
 
 v.
 
 Monk, supra,
 
 the courts below must have attached particular significance to the fact that the merchant, the creditor in that case, was unaware that the lady to whom he extended credit had a husband. Counsel contend that the Court of Appeals applied the converse of this proposition to the instant case.
 

 Dr. Finley testified that he knew Grace Tille was the wife of Harry Tille when he performed the services in question. The lower courts treated the fact that Dr. Finley knew that Grace Tille had a husband at the time he rendered the services as largely controlling, and that little or nothing further was needed in order to create liability on the part of Harry Tille for Grace Tille’s debt.
 

 The record does not support this contention, as the majority court delivering the opinion cite authorities tending to hold the husband liable, independent of this fact. We admit that it is an important fact, but we do not admit that it is controlling. A careful reading of the
 
 Monk case
 
 divulges that the learned judge who wrote the opinion was influenced very little by the fact thatjhe merchant was unaware that the debtor-wife had a husband living when she incurred the debt. He
 
 *581
 
 based bis opinion on more substantial grounds, as will be noted from the following excerpts:
 

 After citing 13 Euling Case Law, 1200, Section 233, he adopts the following rule: “Though there are decisions to the contrary, the better view seems to be that in order to render a husband liable for necessaries furnished his wife they must have been furnished on his credit.”
 

 In conclusion he states: “We are content to follow the current of authority and hold the husband not liable for debts contracted upon the sole responsibility of his wife.”
 

 We regard this as a clear, succinct statement of the law, and the dissenting judge in the instant case was right in his pronouncement.
 

 Upon whose credit did Dr. Finley render the medical services in question? When this question is properly answered, this case is decided.
 

 Dr. Finley wavered in his testimony as to whether or not he knew Grace Tille was a married woman when he rendered the services in question; but we regard this as inconsequential. He did testify that he made the charge on his account book against Grace Tille; that she paid the only moneys credited on such account, and he gave
 
 her
 
 account credit for the payments. His testimony as shown by the bill of exceptions is conclusive as to whom the credit was extended and to whom he looked for his pay. He stated baldly that he looked to Grace Tille for his pay.
 

 We must conclude from this testimony that Dr. Finley at no time regarded the fact, if he knew it, that Grace Tille was married, as giving his account added security. He rendered the services at her request. He made all charges against her on his account book, and, as he says, he looked to her for his pay.
 

 In view of all these facts it is only fair to assume that it was not until Dr. Finley learned that his account against Grace Tille was uncollectible that he
 
 *582
 
 proceeded against Harry Tille. The account hook, Exhibit A, was not admissible as against Harry Tille. Dr. Finley could qualify his account book by testifying it was his account book, that it was a book of original entries, that the entries were made by him or by some other person under his supervision, duly authorized. Then the book could be admitted, to speak for itself. It could not speak against Harry Tille, for his name nowhere appeared in it.
 

 This court, coming now to finally determine this case, finds that Dr. Finley furnished medical services as claimed by him to Grace Tille, at her solicitation and request; that he extended the credit to Grace Tille, and that he looked to Grace Tille alone for his pay; and that Harry Tille was the husband of Grace Tille at the time the services were rendered. Under this state of facts, there is no liability on the part of Harry Tille to pay Dr. Finley for medical services rendered to Grace Tille.
 

 Judgment reversed.
 

 Weygandt, O. J., Day, Allen, Jones and Matthias, JJ., concur.