**SMITH, Guardian, Plaintiff v SMITH et, Defendants.**

Probate Court, Franklin County.

No. 96066.

Tussing & Lane, Columbus, for plaintiff.

## OPINION

By McCLELLAND. J.

This matter comes before this court upon the petition of the plaintiff for a declaratory judgment upon certain matters hereinafter set forth, and which arise out of the following facts, which have been agreed to by the parties.

The testator died on August 5. 1937, and his will was admitted to probate by the Probate Court of Franklin County, Ohio, on Au-

gust 10, 1937. The Huntington National Bank was named as execu-
tor and trustee by the testator, and qualified in this court as trustee
under said will on December 16, 1937. We will not quote the entire·
will but only the petinent portions thereof. After making certain.
specific bequests the testator uses the following language:

"Item 5. I give, devise and bequeath all of the remainder and.
residue of my estate, of every kind and character and wherever lo-
cated, in trust to The Huntington National Bank of Columbus, Ohio,.
to be by it held. dealt with and administered as trustee for the uses.
and purposes following and on the terms and conditions hereafter·
stated. * * *

(G) After the payment of the costs and expenses of adminis-
tering the trust and all taxes and public charges assessed against any
of the property forming a part of the trust estate, the net income·
arising from the principal trust estate during the life of my wife,.
Cora May Smith, shall be paid to her at such reasonable intervals.
as may be agreed upon between my wife and said trustee.

(H) At the death of my wife, Cora May Smith, the principal
trust hereby created shall terminate, and said trust estate, after
deducting and paying therefrom the expenses of the last illness and.
funeral of my wife, which said trustee is hereby authorized and di-
rected to pay. shall be divided and thereafter held in separate trusts
for the benefit of my son and daughters according to the provisions
following: Provided. that if my wife dies before my estate is finally
administered, then said separate trusts shall be created upon final.
settlements of my estate."

Then follows additional provisions of the will by which the es-
tate is divided into four equal portions and separate trusts set up
for the benefit of each of the four children of the testator.

The estate of the testator was one of considerable volume and
a large portion of the same passed into the hands of the trustee un-
der the provisions hereinbefore set forth. The trustee made distri-
butions to the beneficiary as follows: In 1938. $34,326.74; in 1939,
$36,182.15; in 1940, $18,271.41. and in 1941. $19,493.58, the total of
the above payments being $108,273.88. The testimony further dis-
closes that over the period from 1938 to 1941, both inclusive. the·
beneficiary received additional income at various intervals in such
an amount as to make the entire income for said period the sum of·
$133,162.43. The beneficiary of the trust, the wife of the testator,
found that the income provided for her was much greater than an.
amount necessary to maintain her in the standard of living in which
she desired to live. Accordingly. in 1938, she devised a plan for dis-
tributing the surplus income among her four children, which plan
was explained to and accepted by her children, all of whom were

adults and sui juris. In 1938 the life tenant distributed to her four children the sum of $4,947.00 each, the total being $19,788.00. In 1937 she distributed to each child the sum of $3900.00, the total for the year being $15,600.00. In 1940 she distributed cash and common stock of the company in which her husband was interested, the sum of $7,500.00 each, or a total of $30,000.00. In 1941 she distributed the sum of $15,965.32 in cash and stock, the amount going to each child being $3,991.43.

In the early part of 1942 the widow, the beneficiary of the trust, became incompetent, and on January 14. 1942, the plaintiff in this cause was appointed guardian of the person and estate of said beneficiary. On November 14, 1940. one of the daughters, being one of the four remaindermen, died, and her husband, one of the defendants herein, was appointed guardian of her three minor children. For sometime subsequent to the appointment of the guardian for the beneficiary, her guardian continued the distribution of the surplus income according to the plan followed by the life tenant during her period of competency. The testimony shows that since the guardian has been appointed the cost of her maintenance and support is approximately $6,000.00 per year. The testimony further dicloses that the ward is now approximately seventy-eight years of age and that there is no probability of her ever being restored to competency, and that the sum of $6,000.00 per annum will in all probability be a sufficient amount to maintain her during the remainder of her life

The question therefore presented by the petition under the foregoing statement of facts is: Does the Probate Court having charge of the estate of an incompetent, have the jurisdiction to order the guardian to pay surplus income not necessary for the ward's support, to her children, who, if she died intestate, would be her sole and only heirs, and who are the beneficiaries of a will executed by the beneficiary prior to the date of her incompetency?

Counsel for the petitioner has furnished the court with citations of courts of other states, but unfortunately we have been unable to find an adjudication of this particular question by the courts of Ohio. One of the latest decisions to which our attention has been called is by the Supreme Court of California in the case of In re: Hudelson's Estate. rendered on August 7, 1941. and reported in 115 Pacific Reporter, 2nd Series, page 805. The decision of the court on the particular question therein presented is not decisive of the question now before this court. In the Hudelson case just referred to. it is disclosed that the statute of California specifically permits a court to order a guardian to distribute surplus income to the next of kin, whom. the ward would, in the judgment of the court, have aided if said ward had been of sound mind. In that case the court did order the surplus income distributed among the next of kin. and further, without statutory authority, made distribution subject to

the condition that the amount distributed to any distributee who later would become an heir of the deceased, be an advancement. The question therefore in that case was whether the court had the right to attach such a condition upon an order granting a distribution. The court had specific authority to make the distribution, but not specific authority to attach a condition.

Although the chief question in that case is not decisive of the case at bar, the court does discuss at considerable length the equity power of a court to make a distribution of surplus income of an incompetent.

In the case at bar, however, the question is still more limited because of the fact that the beneficiary during the period of competency had adopted and pursued a plan of distributing the surplus income among her four children. Our question therefore must be limited to the right of a guardian to pursue a plan of distribution which had been adopted and partially carried out by the ward in her lifetime. The court in the above referred to decision reviews both the English and American authorities and comes to the conclusion that a court in the general exercise of its equity powers has a right to put itself in the place of the ward and make the distribution which it has reason to believe the ward would have made if competent.

As we have hereinbefore indicated, the court in the Hudelson case had the question as to whether it could attach a condition to an order of distribution, by which condition the distribution would be considered an advancement from the estate of the distributor. That question is not raised in the case at bar and we do not believe it is advisable to make a finding in that respect We suggest, however, that the answer to that question may be found in the decision of the court above mentioned.

Our attention has also been called to a recent case decided by the District Court, W. D., New York, on February 25, 1942, and being the City Bank Farmers Trust Co. v McGowan. Collector of Internal Revenue, reported in 43 Federal Supplement, page 790. Without reciting a statement of facts in that case, we simply quote from page 793 of that court's opinion, as follows:

"There can be no question that the Supreme Court under its broad powers can make allowances out of the surplus income of an incompetent 'upon the theory that the lunatic would. in all probability, have made such payments if he had been of sound mind.' Matter of Lord, 227 N. Y. 145, 124 N. E. 727, 728; In re Andrews, 192 N. Y. 514, 85 N. E. 699; Matter of Flagler, 248 N. Y. 415, 162 N. E. 471, 59 A. L. R. 649."

The Court of Chancery of New Jersey, on September 9, 1932, In re Johnson, reported in 162 Atlantic, at page 96, also passed upon

the same general question. In that case a nephew and niece of the half-blood of an incompetent person made an application to require the guardian to turn over to them some surplus income. The court held that the evidence was insufficient to show that the incompetent himself would have provided for the support of such persons if he had been of sound mind and legally competent to make such a distribution. We quote from the body of the opinion, as follows:

"Petitioners contend, however, that it could be shown to the court that, if the incompetent were sane, he would make such allowances. The general rule on this subject is that the court will do that, in these matters, which it is reasonable to believe the lunatic himself would do if he had the capacity to act. The decisions are numerous and all to this effect. The following are illustrative cases: Ex parte Whitbread, 2 Meriv. 102; In re Willoughby 11 Paige (N.Y.) 257; In re Heeney, 2 Barb. Ch. (N.Y.) 326; 34 L. R. A. 297."

From page 651 we quote the following language of the court:

"The power of the court to dispose of her income is not plenary. The court may not be moved by its own generous impulses in the disposition of the income of the incompetent. In reaching decision it may give to moral or charitable considerations only such weight as it finds that the incompetent herself would have given to them. Allowances for the support of collateral relatives of the incompetent have been made upon the theory that the lunatic would, in all probability, have made such payments if he had been of sound mind."

At page 652 we find the following language:

"We recognize, of course, that the court has a large field for the exercise of its discretion in granting or withhholding an allowance even where justification exists for the invocation of its powers."

In Vol. 34 of L. R. A., at page 297, we find reported the case of Lewis C. Potter v. Arthur E. Berry, Guardian of Samuel Dally, in which decision the court discusses various phases of this question and various circumstances in which the court may exercise such an authority. Under Note VIII we find citations to cases which discuss the right of a court to order the guardian of an incompetent person to carry out a plan which had been adopted by the ward prior to incompetency, to distribute the surplus income due him. In that case the court refers to Hambleton's Appeal, 102 Pa., at page 50, In re Hybart, 119 N. C. 359, Shaffer v List, 114 Pa. 486. From the body of the court's opinion we quote the following language:

"The general rule on this subject is that the court will do that in these matters which it is reasonable to believe the lunatic himself would do if he had the capacity to act. The decisions are numerous and all of this effect."

The court then refers to a number of the cases hereinbefore referred to.

Now going to the equity jurisdiction of the court, we refer to §10501-53 GC, which is the section of the statute conferring jurisdiction upon the Probate Court. It is to be noted that there are thirteen different delegations of power to the probate courts, one of which is Twelve, to render declaratory judgments. The last paragraph, however, of the statute reads as follows:

"The probate court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute."

It is therefore obvious that the court has specific authority to render declaratory judgments, and it also has the additional authority conferred by §12102-1 GC.

The relief sought is a declaratory judgment. The relief sought is in a guardianship under the direction of this court. It is therefore most obvious that the court has the jurisdiction to entertain the action, and also to give relief which is sought therein.

Therefore, in the light of the authorities hereinbefore referred to, we come to the conclusion that this court has the jurisdiction to approve or disapprove the distribution heretofore made by the guardian, and also to order or refrain from ordering any further distribution.

We find that the beneficiary of the trust during the time of her competency did adopt a plan for the distribution of her estate and pursued that plan up until the time she was declared incompetent. This court finds that the sum of approximately $6,000.00 will be necessary per annum for the support and maintenance of the ward, and unless the surplus is distributed the guardian will be compelled to accumulate same until the death of the beneficiary. The court therefore finds that in all probability had the beneficiary remained competent she would have continued her plan of distribution during the remainder of her life. We therefore hold that the guardian may in his discretion, but with the approval of this court, make such distribution of the surplus income as the ward would have done if she had remained competent.

We further find that the distributions made by the guardian were made in pursuance of the plan adopted by the ward during her competency and that the same should be approved.

An order may be drawn accordingly.