IN RE RAUSCHER.

---

[1] Alan G. Gelbman, Administrator of the Estate of Justine Rauscher, was substituted as the appellant-movant upon

(No. 52819—Decided October 19, 1987.)

*Peter A. Sackett,* for appellant administrator Alan G. Gelbman.

*Gerald K. Carlisle* and *Steven I. Helfgott,* for appellee guardian.

PATTON, J. Appellant[1] appeals from a judgment of the probate court, which denied a motion for an order to the guardian to pay his ward's legal debts.

Albert and Justine Rauscher were married December 1, 1973. It was the second marriage for both parties. Both

the death of Justine Rauscher, pursuant to App. R. 29(A).

spouses had substantial personal assets at the time of the marriage. There was no issue from the marriage.

In the fall of 1984, Justine Rauscher transferred all of her personal assets, totalling $130,000, to her daughter, Anita Troy. In the fall of 1985, Albert Rauscher suffered a disabling stroke and was institutionalized. Because he was unable to care for himself, Albert Rauscher was made a ward of his son, Walter C. Rauscher. At the time, the ward's estate was worth approximately $150,000, with monthly income of approximately one thousand dollars.

Subsequent to Albert Rauscher's stroke, Justine Rauscher suffered a severe coronary. Albert and Justine were both placed in the Aristocrat Nursing Home for their residence and care. Expenses for Albert Rauscher are approximately $1,850 per month.

Thereafter, Justine Rauscher made demand upon Albert Rauscher's guardian to pay her medical expenses. When the guardian refused, Justine Rauscher filed a motion in probate court to force the guardian to pay pursuant to his ward's statutory duty under R.C. 3103.03. The case was heard before a referee, who found in favor of the guardian. Objections to the referee's report were filed. After briefing the issue of jurisdiction, the probate court dismissed the matter as not being a proper cause of action. It also ruled in the alternative that R.C. 3103.03 was unconstitutional as being gender-based discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Appellant-movant filed this timely appeal and sets forth two errors for our review:

"I. The trial court erred in finding movants [sic] motion an improper cause of action.

"II. The trial court erred in ruling Ohio Revised Code Section 3103.03 unconstitutional as a gender-based statutory scheme which violates the Equal Protection Clause of the United States Constitution."

I

Appellant's first assignment of error concerns the scope of the probate court's subject matter jurisdiction. The precise issue is whether the probate court has subject matter jurisdiction over an action by a wife to compel her husband's legal guardian to pay her medical expenses under R.C. 3103.03. We hold that there is subject matter jurisdiction in the probate court.

The jurisdiction of the probate court is statutorily defined. R.C. 2101.24 provides:

"(A) Except as otherwise provided by law, the probate court has exclusive jurisdiction:

"* * *

"(4) To appoint and remove guardians and testamentary trustees, direct and control their conduct, and settle their accounts;

"* * *

"(13) To direct and control the conduct of fiduciaries and settle their accounts;

"* * *

"(C) The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by statute. * * *"

R.C. 2111.13 sets forth the duties of guardians. R.C. 2111.13(A)(4) clearly directs a guardian "[T]o obey all the orders and judgments of the probate court touching the guardianship."

The probate court has continuing and exclusive jurisdiction over both the ward and the guardian. R.C. 2101.24 (A); *In re Clendenning* (1945), 145 Ohio St. 82, 30 O.O. 301, 60 N.E. 2d 676. The probate court has plenary power

at law and in equity, but only to the extent that a matter is properly before the court. R.C. 2101.24(C); *Oncu* v. *Bell* (1976), 49 Ohio App. 2d 109, 3 O.O. 3d 175, 359 N.E. 2d 712. The laws relating to the jurisdiction of the probate court are remedial and must be liberally construed. *Natl. City Bank of Cleveland* v. *Baldwin* (1962), 90 Ohio Law Abs. 228, 236, 21 O.O. 2d 145, 148.

The court having jurisdiction of the guardianship matter is the superior guardian, while the guardian himself is deemed to be an officer of the court. *In re Clendenning, supra,* at 93, 30 O.O. at 305-306, 60 N.E. 2d at 681. In order to effectuate the state's interest in the guardianship, the probate court's jurisdiction is extended to all matters "touching the guardianship." R.C. 2111.13(A)(4); *In re Zahoransky* (1985), 22 Ohio App. 3d 75, 22 OBR 173, 488 N.E. 2d 944. Jurisdiction in the case *sub judice* will depend upon whether the matter is one that "touches the guardianship."

Appellant originally brought this action to compel the guardian to pay her medical expenses from the ward's funds, pursuant to his duty to support her. Any action on the part of the guardian which would affect the ward's funds would be one that touches the guardianship. The court would then have jurisdiction to hear the matter under its power to direct and control guardians and fiduciaries.

Other probate courts have explicitly or impliedly exercised their jurisdiction in similar matters where the issue concerned a guardian's payment of the ward's funds.

In *Martin* v. *Martin* (1949), 55 Ohio Law Abs. 31, 88 N.E. 2d 59, this court remanded to the probate court an action wherein the probate court had denied the wife-guardian of a ward access to the ward's assets. Similarly, in *Smith* v. *Smith* (1943), 38 Ohio Law Abs. 503, 26 O.O. 541, the probate court stated that it had jurisdiction to approve past payments by a guardian of surplus income not necessary for the ward's support if the court were convinced the ward would have so acted if of capacity.

Appellee contends that R.C. 2109. 59,[2] concerning complaints for payment or distribution, applies and is the

---

[2] R.C. 2109.59 provides:

"If a fiduciary, upon demand, refuses or neglects to pay any creditor whose claim has been allowed by the fiduciary and not subsequently rejected or to pay any creditor or make distribution to any person interested in the estate whose claim or interest has been established by judgment, decree, or order of court, including an order of distribution, such creditor or other person may file a petition against the fiduciary in the probate court from which the fiduciary received his appointment to enforce such payment or distribution, briefly setting forth therein the amount and nature of his claim or interest. Such petition shall not be filed against an executor or administrator until the expiration of the period prescribed in section 2117.30 of the Revised Code.

"When such petition is filed, the probate court shall issue a citation to the fiduciary setting forth the filing of the petition and the nature of the claim of the petitioner and commanding such fiduciary to appear before the court on the return day thereof to answer and show cause why a judgment should not be rendered or order entered against him. Such citation shall be returnable not less than twenty nor more than forty days from its date and shall be served and returned by an officer as in the case of summons. Such citation may issue to any county in the state.

"On the return of the citation the cause shall be for hearing, unless for good cause shown it is continued. The probate court may hear and determine all questions necessary to ascertain and fix the amount due from the fiduciary to the petitioner and render such judgment or make such order as may be proper. If necessary, such court may hear, determine, and settle the rights and claims of all parties interested in the

exclusive means of jurisdiction for the probate court in this matter.

While we question whether the wife of the ward is a creditor as contemplated by R.C. 2109.59, our prior discussion of jurisdiction makes that determination unnecessary.

Appellant's first assignment of error is well-taken.

## II

Ordinarily, the determination that the probate court has subject matter jurisdiction would end a review of this appeal. The probate court, however, determined in the alternative that if appellant's motion were a proper cause of action, R.C. 3103.03, upon which appellant based her cause of action, is unconstitutional as being gender-based discrimination. Therefore, pursuant to App. R. 12(A), we will address the merits of appellant's second assignment of error, the substance of which is whether the trial court erred in declaring R.C. 3103.03 unconstitutional.

R.C. 3103.03 provides:

"The husband must support himself, his wife, and his minor children out of his property or by his labor. If he is unable to do so, the wife must assist him so far as she is able.

"Notwithstanding section 3109.01 of the Revised Code, the parental duty of support to children shall continue so long as the child continuously attends on a full-time basis any recognized and accredited high school, even when such child had attained the age of majority. Such duty of support shall continue during seasonal vacation periods. If he

neglects to support his wife, any other person, in good faith, may supply her with necessaries for her support, and recover the reasonable value thereof from the husband unless she abandons him without cause."

`R.C. 3101.03 is the codification of the common-law doctrine of necessaries. That doctrine placed the primary duty of family support on the husband. This was due in great part to the disability of married women to enter into contracts. *Phillips* v. *Graves* (1870), 20 Ohio St. 371, 380; see, generally, 47 Ohio Jurisprudence 3d (1983), Family Law, Section 590 *et seq.* By making the husband primarily liable for necessaries purchased by the wife, it was thought that creditors would be more willing to allow wives to purchase such items. Creditors knew that if the wife were unable to pay, her husband would be liable.

R.C. 3103.03 now changes the common-law doctrine to some extent since it removes the entire burden of support from the husband. "As women gradually entered man's former sphere, the law in its wisdom relaxed its requirements so far as the man and husband was concerned. It shifted some of the responsibility from his shoulders to the shoulders of the women and wife." *Tille* v. *Finley* (1933), 126 Ohio St. 578, 579, 186 N.E. 448. Now the husband has only the primary duty of support; the wife has the secondary duty should the husband be unable to support the family.

The distinction between primary and secondary duties of support has been questioned in light of equal pro-

subject matter of the petition. For such purpose the probate court may cause all parties in interest to be made parties to such petition by amended, supplemental, or crosspetition. The court shall cause notice to be served on all such parties in the manner provided in this section for service of the citation upon the fiduciary.

"In any such proceeding the sureties on the bond of the fiduciary, if made parties thereto, may make any defense that the fiduciary could make and the court may render such judgment or make such order with respect to the sureties as may be proper."

tection terms. At least one appellate court in Ohio has raised such questions. See *Hacker* v. *Hacker* (1981), 5 Ohio App. 3d 46, 5 OBR 50, 448 N.E. 2d 831. Appellant has raised the issue, and we now examine it.

R.C. 3103.03 is a gender-based statute that discriminates against men by placing the primary burden of family support on them. Cf. *Marshfield Clinic* v. *Discher* (1982), 105 Wis. 2d 506, 314 N.W. 2d 326; *Jersey Shore Medical Center-Fitkin Hosp.* v. *Estate of Baum* (1980), 84 N.J. 137, 417 A. 2d 1003. The fact that the law discriminates against men rather than women does not protect it from constitutional scrutiny. *Craig* v. *Boren* (1976), 429 U.S. 190; *Orr* v. *Orr* (1979), 440 U.S. 268, 279.

The United States Supreme Court has invalidated statutory schemes that require different treatment to be accorded persons on the basis of sex. Statutory schemes that establish such a classification are subject to scrutiny under the Equal Protection Clause. *Reed* v. *Reed* (1971), 404 U.S. 71, 75. Not all classifications based on gender must fall. The court subjects such statutes to an intermediate level of scrutiny: Classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives. *Califano* v. *Webster* (1977), 430 U.S. 313, 316-317.

The court has not been receptive to the concept of the wife as the dependent spouse. See *Wengler* v. *Druggists Mut. Ins. Co.* (1980), 446 U.S. 142 (invalidating a state workers' compensation statute that required widowers but not widows to prove dependency); *Califano* v. *Westcott* (1979), 443 U.S. 76 (social security law providing aid to families with dependent children when husband becomes unemployed, but not when wife becomes unemployed, is unconstitutional).

On point is *Orr* v. *Orr, supra.* The court struck down a state statute that provided alimony for wives but not for husbands. The court rejected the notion that the man is solely responsible to provide a home and its essentials:

"There is no reason, therefore, to use sex as a proxy for need. Needy males could be helped along with needy females with little if any additional burden on the state. In such circumstances, not even an administrative-convenience rational exists to justify operating by generalization or proxy. * * *" *Orr, supra,* at 281.

Indeed, " '[n]o longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas * * *.' " *Id.* at 280, quoting *Stanton* v. *Stanton* (1975), 421 U.S. 7, 14-15; cf. *Frontiero* v. *Richardson* (1973), 411 U.S. 677 (requirement that a wife must show her husband is actually dependent in order to claim him as a dependent for purposes of armed forces benefits allowances is unconstitutional); *Reed* v. *Reed, supra* (state law giving preference to men as administrators of estates violates equal protection).

Appellant contends that R.C. 3103.03 is substantially related to four important governmental objectives:

1. Benefits families by making it more likely than not that services will be provided;

2. Enables wives to obtain credit more easily;

3. Protects wives from economic hardship by placing prime liability on husbands; and, most importantly,

4. Assists third-party creditors in assuring their certainty of payment.

Providing for needy spouses is surely an important governmental objective. *Orr, supra,* at 280. But the question remains whether the discriminatory means employed itself substantially serves the statutory end. *Wengler, supra,* at 151. Setting aside for the moment any archaic assumptions em-

bodied by R.C. 3101.03, the statute merely helps the financially independent wife. She alone is the one who could afford her own necessities but would not be required to pay for them. In striking down a federal statute that provided social security survivor's benefits to a widow but not to a widower, the court stated the offensive assumption was "that male workers' earnings are vital to the support of their families, while the earnings of female wage earners do not significantly contribute to their families' support." *Weinberger* v. *Wiesenfeld* (1975), 420 U.S. 636, 643. While the statute helps the needy wife in many instances, that is insufficient reason to retain a gender-based classification that denigrates the efforts of women who contribute to the finances of their families and denies equal protection to their husbands. *Id.* at 645.

The goal of assisting third-party creditors in assuring their certainty of payment could also be served by a gender-neutral rule. If both spouses were liable, the creditor could extend credit and sue both spouses should a default occur. The court would determine the liability of each spouse and for what share, just as it must do under the statute as it now stands.

It follows that the statute is not substantially related to important governmental interests. Therefore, it is unconstitutional as being gender-based discrimination. Appellant's second assignment of error is overruled. This action is remanded to the probate court for a hearing to make a gender-neutral determination as to the ability of the parties to pay and to make a decision on the merits.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

NAHRA, C.J., and CORRIGAN, J., concur.