**In re GUARDIANSHIP OF McPHETER.**

[Cite as *In re Guardianship of McPheter* (1994), 95 Ohio App.3d 440.]

Court of Appeals of Ohio,
Huron County.

No. H–93–029.

Decided Aug. 5, 1994.

*Robert F. Thornton,* for appellant.

*John R. Ball,* for appellee.

ABOOD, Presiding Judge.

This is an appeal from a judgment of the Huron County Court of Common Pleas, Probate Division, in which damages were awarded to the estate of Margaret McPheter for appellant's failure, while guardian, to rent or sell the ward's residence.

Appellant sets forth the following assignments of error:

"Assignment of Error Number One

"The court in its judgment and proceedings in this cause erred to the prejudice of appellant in adjudging that it had subject matter jurisdiction in this cause and proceeding to grant judgment herein against appellant, George E. Painter, Jr., the former guardian.

"Assignment of Error Number Two

"The court in its judgment and proceedings in this cause erred to the prejudice of appellant in adjudging that the defense of 'advice of counsel' was not applicable in this matter and not exonerating appellant from the damage claims herein.

"Assignment of Error Number Three

"The court in its judgment and proceeding in this cause erred to the prejudice of appellant in granting appellee's motion to vacate the order settling the former guardian's third and fourth accounts and awarding the damages as demanded in the appellee's said motions and exceptions thereto.

"Assignment of Error Number Four

"The judgment of the court in awarding damages for the loss of rental is against the manifest weight of the evidence.

"Assignment of Error Number Five

"The part of the judgment of the court in awarding the sum of $16,800.00 for lost rentals is against the manifest weight of the evidence.

"Assignment of Error Number Six

"The court abused its discretion to the prejudice of appellant in awarding appellee, as an element of damage, the fiduciary fees that appellant had received during the periods or parts of periods covered by the third, fourth and fifth accounts."

The facts that are relevant to the issues raised on appeal are as follows. On May 10, 1982, appellant was appointed guardian of the estate and person of Margaret McPheter, an incompetent. In 1987, McPheter was placed in a nursing home without any reasonable prospect that she would ever return to her own home. On December 10, 1991, appellant was removed as guardian for failure to manage the guardianship real estate in the best interest of the ward. In doing so, the probate court found that appellant had permitted McPheter's residence to remain unproductive for over four years, during which time guardianship funds were expended for utilities, maintenance, insurance and taxes, when he knew that she would never be able to return to her home. Appellant appealed the probate court's decision and this court affirmed the lower court's judgment on October 9, 1992. On January 25, 1993, the successor guardian, appellee, filed exceptions to the fifth and final guardian's account. On March 4, 1993, appellee filed motions

to vacate the orders settling and approving the third and fourth guardian's accounts.

On April 20, 1993, a hearing was held in the Huron County Probate Court on appellee's motions. The parties stipulated to a reasonable rental value for McPheter's residence during the time in question of $350 per month and as to the accuracy of the amounts specified for utility expenditures during the same period. Appellee testified that she had not received notice of the hearings to consider the third, fourth and fifth accounts filed by appellant, which were held on April 14, 1989, May 24, 1991, and January 31, 1992, respectively. Appellee stated further that McPheter had been evaluated when she entered the nursing home in 1987 and it was determined at that time that she would most likely never return to her home. Appellee testified that she sold McPheter's house in July 1992 and invested the proceeds of the sale on behalf of the ward.

Appellant testified that he was not aware of the evaluation of McPheter in 1987 but stated that he had not been told by any of her caretakers that she might sometime be able to return home. Appellant agreed that he had not filed any petitions with the probate court for permission to sell or lease the residence while he was guardian. Appellant testified further that he paid McPheter's bills, maintained the property, filed her income taxes and checked on the care she was receiving at the nursing home. He testified that he had discussed the possibility of selling McPheter's home with his attorney and that he was advised that it was his responsibility to conserve the property rather than sell or rent it. On June 23, 1993, the trial court issued findings of fact and conclusions of law in which it found that:

"a) appellee, in her then individual capacity, was made a party to the hearing to settle and approve the third guardian's account on April 14, 1989 solely by means of notice by publication and that she did not receive actual notice of the hearing;

"b) appellee, in her then individual capacity, was made a party to the hearing to settle and approve the fourth guardian's account on May 24, 1991 solely by means of notice by publication and that she did not receive actual notice of the hearing;

"c) appellee, in her then individual capacity, was made a party to the hearing to settle and approve the fifth and final guardian's account on January 31, 1992 solely by means of notice by publication and that she did not receive actual notice of the hearing;

"d) as to the third guardian's account from January 1, 1988 through the completion of the account:

"—appellant expended $596.45 on utilities;

"—the total potential rental income lost due to appellant's failure to lease the property was $4,200;

"—appellant received $2,349 as fiduciary fees for services rendered;

"e) as to the fourth guardian's account from January 14, 1989 through January 31, 1991:

"—appellant expended $2,086.28 on utilities;

"—the total potential rental income lost due to appellant's failure to lease the property was $8,750;

"—appellant received $2,086 as fiduciary fees for services rendered;

"f) as to the fifth guardian's account from February 1991 through December 16, 1991:

"—appellant expended $417.77 on utilities;

"—the total potential rental income lost due to appellant's failure to lease the property was $3,850;

"g) at no time during his term as guardian did appellant file a petition to sell or lease the property."

The trial court found further that appellant, despite reliance upon the advice of legal counsel, had not acted in a reasonable and prudent manner to manage the assets of the ward in her best interest and found appellee's motions and exceptions to the third, fourth and fifth guardian's accounts and her demand for money damages well taken. On July 7, 1993, the trial court entered judgment against appellant for damages in the amount of $4,796.45 for the loss of assets and rental income as to the third guardian's account, in the amount of $11,619.28 for the loss of assets and rental income as to the fourth guardian's account, and in the amount of $6,353.77 for the loss of assets and rental income as to the fifth and final guardian's account. It is from that judgment that appellant appeals.

In his first assignment of error, appellant asserts that R.C. 2101.24 does not provide the probate court with jurisdiction to award money damages. Appellee responds that any matter pertaining to a guardianship is properly before the probate court and, in the absence of statutory authority to the contrary, the probate court may fully consider such matters and may award money damages when appropriate.

The jurisdictional relationship between the general and probate divisions of the court of common pleas was summarized by the Supreme Court of Ohio in *Schucker v. Metcalf* (1986), 22 Ohio St.3d 33, 22 OBR 27, 488 N.E.2d 210, as follows:

"We begin by noting that 'the power to define the jurisdiction of the courts of common pleas rests in the General Assembly and * * * such courts may exercise only such jurisdiction as is expressly granted to them by the legislature.' *Seventh Urban, Inc. v. University Circle* (1981), 67 Ohio St.2d 19, 22 [21 O.O.3d 12, 14, 423 N.E.2d 1070, 1073] * * *. 'The court of common pleas is a court of general jurisdiction. It embraces all matters at law and in equity that are not denied to it. * * * The probate court is a court of limited jurisdiction; it can exercise just such powers as are conferred on it by statute and the constitution of the state * * *.' *Saxton v. Seiberling* (1891), 48 Ohio St. 554, 558–559 [29 N.E. 179, 180]." *Id.* at 34, 22 OBR at 28, 488 N.E.2d at 212; see, also, *Corron v. Corron* (1988), 40 Ohio St.3d 75, 77, 531 N.E.2d 708, 710; and *Alexander v. Compton* (1978), 57 Ohio App.2d 89, 11 O.O.3d 81, 385 N.E.2d 638.

The jurisdiction of the probate court is set forth in R.C. 2101.24, which states the following:

"(A)(1) Except as otherwise provided by law, the probate court has exclusive jurisdiction:

" * * * *

"(d) To appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts;

" * * * *

"(*l* ) To direct and control the conduct of fiduciaries and settle their accounts[.]

" * * * *

"(C) The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code."

The Supreme Court of Ohio has found that the probate court has exclusive jurisdiction, unless otherwise provided by law, as to all matters set forth in R.C. 2101.24 and as to all matters pertaining directly to the administration of estates. *Wolfrum v. Wolfrum* (1965), 2 Ohio St.2d 237, 31 O.O.2d 501, 208 N.E.2d 537, paragraph two of the syllabus; *Jacobsen v. Jacobsen* (1956), 164 Ohio St. 413, 58 O.O. 239, 131 N.E.2d 833, paragraph one of the syllabus. Additionally, pursuant to R.C. 2101.24, Ohio courts have held that the probate courts have continuing and exclusive jurisdiction over all matters pertaining to a guardian and his ward, *In re Clendenning* (1945), 145 Ohio St. 82, 30 O.O. 301, 60 N.E.2d 676, and that the probate court's jurisdiction over the guardianship is extended to all matters "touching the guardianship," *In re Rauscher* (1987), 40 Ohio App.3d 106, 108, 531 N.E.2d 745, 747.

The Eighth District Court of Appeals recently considered the question of whether a probate court has exclusive jurisdiction, pursuant to R.C. 2101.24, to hear and determine a cause of action brought by a legatee for a breach of fiduciary duties against coguardians, coexecutors and the surety on a bond posted by the coguardians. *Goff v. Ameritrust Co., N.A.* (May 5, 1994), Cuyahoga App. Nos. 65196, 66016, unreported, 1994 WL 173544. In *Goff,* the legatee had filed suit in the general division of the court of common pleas demanding that the coguardians and coexecutors of his mother's estate pay damages to him as a result of their breach of fiduciary duty to their ward. The defendants filed motions to dismiss for lack of subject matter jurisdiction, arguing that the probate court has exclusive jurisdiction to settle the accounts and direct and control the conduct of executors and guardians pursuant to R.C. 2101.24. The defendants also argued that the probate court in which an estate is being administered has plenary power to dispose fully of all matters relating to that estate, pursuant to R.C. 2101.24(C). The trial court dismissed the legatee's complaint for lack of subject matter jurisdiction and the judgment was appealed.

On appeal, the *Goff* court, after a thorough analysis of the issue, concluded that "[a]n action seeking monetary damages is within the probate court's plenary power at law and clearly affects the court's direction and control of the fiduciaries' conduct and affects the court's settlement of the fiduciaries' conduct and affects the court's settlement of the fiduciaries' accounts." The *Goff* court emphasized that "the probate court's plenary power at law authorizes [it] to exercise complete jurisdiction over the subject matter to the fullest extent required in a given case." *Id.* at 10.

Probate courts are considered courts of law and equity. R.C. 2101.24(C). In the case before us, appellee filed several motions to vacate appellant's third and fourth accountings pursuant to R.C. 2101.33, which provides the probate court with "the same power as the court of common pleas to vacate or modify its orders or judgments." Once the probate court has exercised its equity jurisdiction in setting aside an order, like any other common pleas court, it may proceed in law or in equity to an appropriate judgment. R.C. 2101.24(C).

Upon consideration of the foregoing, this court finds that (1) the probate court had exclusive jurisdiction and plenary power at law and in equity to fully dispose of all claims against the former guardian pursuant to R.C. 2101.24(A)(1)(d) and 2101.24(C), (2) an action seeking monetary damages is within the probate court's plenary power at law and clearly affects the court's settlement of the guardian's accounts and (3) the trial court did not err in determining that it had subject matter jurisdiction to grant judgment against appellant. Accordingly, appellant's first assignment of error is not well taken.

In his second assignment of error, appellant asserts that the trial court erred in finding him liable for damages to McPheter's estate despite his claim that his decision not to rent or sell her residence was made in reliance upon the advice of his attorney, who told him that he could not sell or rent the home as long as the money that would be realized therefrom was not needed to pay the ward's expenses. Appellant argues that his attorney told him that a guardian's duty is to conserve and preserve the ward's assets and to account for them and that he acted reasonably and prudently in following that advice. Appellee responds that acting upon advice of counsel does not shield the former guardian from liability for damages to the ward's estate.

The Supreme Court of Ohio, in *In re Estate of Butler* (1940), 137 Ohio St. 96, 28 N.E.2d 186, acknowledged that there are cases holding that an administrator should be exonerated because of a loss due to the mistakes or error of his counsel, as distinguished from matters where the primary responsibility rests upon the administrator himself. See *Miller v. Proctor* (1871), 20 Ohio St. 442. The *Butler* court found, however, that "the fact that an executor has had the advice of counsel as to any matter is only one factor entering into the question as to whether he has exercised due care in connection therewith." 137 Ohio St. at 104, 28 N.E.2d at 191.

While *Butler* is distinguishable on its facts from the present case insofar as it concerned an executor's liability to his decedent's estate for the allowance and payment of an invalid claim against the estate, we do find that court's reasoning applicable to the facts of this case. The only evidence in support of appellant's defense is his testimony at the April 1993 hearing that his attorney told him he did not have the authority to rent or sell the house. While advice of counsel may be a plausible defense in some cases as indicated above, we find that the trial court's ruling that appellant is liable for damages despite what his attorney may have advised him is not contrary to law or the weight of the evidence. Accordingly, appellant's second assignment of error is not well taken.

In his third assignment of error, appellant asserts that the trial court erred in granting appellee's motions to vacate the orders settling the third and fourth accounts. Appellant argues that appellee should have been charged with knowledge of the hearings on the accounts and that she was not exempt from the statutory requirement that she file her motions within one year after learning that the accounts were filed and her exceptions five days prior to the date of hearing. Appellant argues further that appellee did not show the good cause required by R.C. 2109.35 for a judgment upon the settlement of a fiduciary's account to be vacated by the probate court. Appellee responds that she had no actual knowledge of the hearings on the third and fourth accounts because she did not subscribe to the newspaper in which notice was published and that it is

the fiduciary's responsibility to ensure sufficient service of process, as suggested by R.C. 2109.32 and 2109.33. Appellee responds to appellant's claim of a lack of good cause by citing the findings of the trial court in the prior action to remove appellant as guardian that "the Guardianship Estate was denied over four (4) years of either rental or interest income due solely to the Guardian's failure or refusal to manage the real property in a reasonable and productive manner."

R.C. 2109.35 provides the following:

"The order of the probate court upon the settlement of a fiduciary's account shall have the effect of a judgment and may be vacated only as follows: " * * *

"(C) The order may be vacated for good cause shown, other than fraud, upon motion of any person affected by the order who was a party to the proceeding in which the order was made *solely by reason of his having been served by publication in a newspaper* in accordance with section 2109.33 of the Revised Code, *if the motion is filed* within one year after that person acquires knowledge of the proceeding and, in any event, *within three years after the order is made. The person shall establish to the satisfaction of the court that he had no knowledge of the proceeding in time to appear in it."* (Emphasis added.)

As to appellant's claim that appellee should have been charged with knowledge of all guardianship matters and therefore held to the one-year limitation set forth above, an examination of the record of proceedings in the court below shows that the trial court found that appellee was made a party to the proceedings to settle and approve the third, fourth and fifth guardian's accounts solely by means of her being served notice by publication and that she did not receive actual notice of any of the three hearings. Additionally, the record shows that appellee filed her motions to vacate within three years after the orders settling the third and fourth accounts were made.

As to appellant's claim that appellee did not show good cause for vacating the motions, the record indicates the trial court found on June 23, 1993 that appellant, despite his reliance upon the advice of legal counsel, did not act in a reasonable and prudent manner in managing the ward's assets in her best interest, thereby causing the estate to suffer financial losses. We therefore find that appellee met all of the requirements of R.C. 2109.35(C) for vacating an order settling a fiduciary's account. Accordingly, appellant's third assignment of error is not well taken.

█ Appellant's fourth and fifth assignments of error will be considered together, since both concern the trial court's award of damages for loss of rental income. In his fourth assignment of error, appellant asserts in general that the judgment awarding damages for loss of rental income was against the manifest

weight of the evidence and in his fifth assignment of error, he asserts more specifically that the $16,800 judgment was against the weight of the evidence. In support of his claims, appellant cites his own testimony and that of appellee that renting the house would not have been appropriate. Appellant argues that holding him liable for the gross amount of rental income that could have been received from January 1988 until he was removed as guardian was in excess of the damage suffered.

Appellee responds that when she testified that it would have been inappropriate to rent the house she was responding to questions regarding her handling of the estate after she became successor guardian and determined that it would be better to sell the house. Appellee responds further that testimony showed that appellant had allowed the residence to remain vacant for over four years when the guardianship was losing money and it was clear that McPheter would not be returning to her home. Appellee states that appellant did not offer any evidence of costs incurred in maintaining the residence, which might have offset the trial court's assessment of monetary damages.

When considering the weight of the evidence, a reviewing court must not substitute its judgment for that of the trial court. It was that court's function as the trier of fact to observe the demeanor of the witnesses, examine the evidence and weigh the credibility of the testimony and evidence presented. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. A judgment that is supported by some competent, credible evidence going to all of the essential elements of the case should not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

Upon consideration of the evidence presented at trial and as summarized above, this court finds that there was competent, credible evidence presented to support the trial court's findings and judgment as to damages suffered by the McPheter estate. Accordingly, appellant's fourth and fifth assignments of error are not well taken.

In his sixth assignment of error, appellant asserts that the trial court abused its discretion by awarding appellee the fiduciary fees that he had received during the periods or parts of periods covered by the third, fourth and fifth accounts. Appellant argues that he produced evidence that he had attended to all the duties of the trust promptly and professionally by receiving and investing McPheter's income, paying her bills, checking the house at least three times each week, maintaining the property, preparing and filing her income taxes, and checking on her at the nursing home regularly. Appellee responds that the fact that appellant made other profitable investments and provided additional services

to the ward does not excuse his failure to reasonably and prudently manage the real estate.

 ■ Although appellant frames his argument as an issue of abuse of discretion, the appropriate standard when reviewing an award of damages, even when the damages were based on an earlier award of fiduciary fees, is manifest weight of the evidence. As we stated above, a reviewing court should not reverse a lower court's judgment as against the manifest weight of the evidence if that judgment is supported by some competent, credible evidence. *C.E. Morris Co., supra.*

After a thorough review of the record of proceedings before the trial court, it is apparent that the lower court acknowledged numerous contributions by appellant to the ward's estate. In fact, the trial court made the following finding after the April 20, 1993 hearing on appellee's motions:

"*[D]uring the entire time that the Former Guardian served as such, he devoted time and effort and rendered valuable services to the Ward in many areas including but not limited to* maintaining an awareness of her physical condition and needs and attending thereto; receiving funds due her and depositing same; paying her bills; investing her funds and attending to the maintenance of her dwelling."

Upon consideration of the foregoing, this court finds that the trial court's inclusion of the amount of appellant's fiduciary fees for the third, fourth and fifth accounts in its total award of damages for those periods was not supported by competent, credible evidence. Accordingly, appellant's sixth assignment of error is well taken.

On consideration whereof, the decision of the Huron County Court of Common Pleas, Probate Division, is affirmed in part and reversed in part. The decision of that court awarding appellee damages in the amount of appellant's fiduciary fees for the third, fourth and fifth accounts is reversed; all other portions of the decision are affirmed. This case is remanded to the trial court for further proceedings not inconsistent with this opinion. Court costs of this appeal are assessed to appellant.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HANDWORK and SHERCK, JJ., concur.