[Cite as *Hammon v. Huntington Natl. Bank*, 2018-Ohio-87.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105107**

# ZACHARY HAMMON

PLAINTIFF-APPELLANT

vs.

# HUNTINGTON NATIONAL BANK, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED IN PART; REVERSED AND REMANDED
IN PART

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2014 ADV 195963

**BEFORE:** Kilbane, P.J., S. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** January 11, 2018

**ATTORNEY FOR APPELLANT**

George J. Argie
Dominic Vitantonio
Argie, D'Amico & Vitantonio
6449 Wilson Mills Road
Mayfield Village, Ohio 44143


**ATTORNEYS FOR APPELLEES**

**For Huntington National Bank**

Franklin C. Malemud
Clifford C. Masch
Leon A. Weiss
Katie Lynn Zorc
Reminger Co., L.P.A.
101 W. Prospect Avenue, Suite 1400
Cleveland, Ohio 44115


**For First Capital Surety & Trust Co.**

James A. Marx
Brian J. Green
Shapero & Green, L.L.C.
25101 Chagrin Boulevard
Signature Square 11, Suite 220
Beachwood, Ohio 44122


**For Jeffrey P. Consolo**

Steven S. Kaufman
Ashtyn N. Saltz
Kaufman & Company, L.L.C.
1001 Lakeside Avenue, Suite 1710
Cleveland, Ohio 44114

MARY EILEEN KILBANE, P.J.:

{¶1} Plaintiff-appellant, Zachary Hammon ("Hammon"), appeals from the probate court's decision granting the Civ.R. 12(B)(6) motions to dismiss of defendants-appellees, Huntington National Bank ("Huntington"), First Capital Surety & Trust Company ("First Capital"), and Jeffrey P. Consolo ("Consolo"). For the reasons set forth below, we affirm in part and reverse and remand in part.

{¶2} On September 25, 2013, Hammon filed a complaint in the General Division of the Cuyahoga County Common Pleas Court against Huntington, First Capital, and Consolo. Hammon's complaint arose out of a monetary settlement of a medical malpractice action that he received as a minor, and the guardianship established to manage those funds in Cuyahoga P.C. No. 1992-GRD-1079707 (the "guardianship"). When Hammon was a minor, the probate court appointed Huntington as guardian of Hammon's estate, and Consolo acted as counsel for Huntington in its capacity as guardian. As we discuss more fully below, Huntington invested the guardianship estate funds in two separate trusts for which First Capital acted as trustee. The general division dismissed Hammon's complaint for lack of subject matter jurisdiction. On February 20, 2014, Hammon refiled his complaint in Cuyahoga P.C. No. 2014-ADV-195963 (the "adversarial proceeding").

{¶3} In October 2014, the trial court granted Hammon's motion to amend his complaint in response to motions for a more definite statement filed by Consolo and First

Capital.[1]  That same month, Hammon filed his second amended complaint that is now the subject of the instant appeal.

{¶4}  The following is an overview of the allegations contained in Hammon's second amended complaint.  Hammon was born in September 1988.  He sustained a birth injury that resulted in cerebral palsy and impairment of his motor skills.  In September 1992,  the probate court appointed National City Bank ("National City") as guardian of Hammon's estate for the purpose of managing the proceeds of his pending medical malpractice case in the common pleas court.  In December 1993, the probate court approved the settlement of Hammon's medical malpractice case for $3,200,000.[2]

{¶5}  In July 1997, Hammon's mother, Rita Berardinelli ("Berardinelli"), through her attorney, Consolo, filed an application to remove National City as guardian of her son's estate and to appoint Huntington as successor guardian.  In response to this application, National City agreed to step down as guardian.  The probate court appointed Huntington as successor guardian of Hammon's estate.  Hammon alleges that soon after the appointment of Huntington as guardian, Consolo ceased representation of Berardinelli and began to represent Huntington in its capacity as guardian, at the expense of the estate.

---

[1] The trial court granted Hammon's motion for leave to file his first amended complaint instanter and the motions of First Capital and Consolo for a more definite statement in the same entry dated October 3, 2014.  The trial court ordered Hammon to file a second amended complaint to include a more definite statement in response to the Civ.R. 12(E) motions of First Capital and Consolo.

[2] Hammon's second amended complaint states that, after the payment of fees and expenses, the net proceeds of the settlement available to National City as the intial guardian of his estate totaled $1,852,720.

Hammon further alleges that at the time Consolo filed the application to remove National City and appoint Huntington as guardian on behalf of Berardinelli, Huntington was also a client of Consolo and his law firm. He asserts this conflict of interest was never waived.

{¶6} In August 1999, Huntington filed an application for authority to purchase a $1 million annuity to generate an income stream over Hammon's lifetime. In December 1999, the probate court held an initial hearing on this application. Present at the hearing were Huntington representatives, Consolo, Berardinelli, and Hammon's father, David Hammon ("David"). David objected to the idea of an annuity and "advocated for an investment that would create an income stream and that would also protect the principal." The amended complaint further states that David obtained a continuance of the hearing to seek legal representation and consult with financial experts.

{¶7} At the continued hearing in February 2000, all parties in attendance at the December 1999 hearing were again present in addition to David's counsel, attorney Mark Sullivan ("Sullivan"). The parties met to consider and negotiate investment of guardianship funds so that Hammon would not receive a large sum when he turned 18, but rather to provide him with a stream of income over his lifetime. All parties present at the hearing eventually agreed that $1 million would be invested in a "Settlement Preservation Trust," with a projected income of "approximately $85,000 per year" with the $1 million principal being paid back to Hammon when he turned 35. This agreement was reflected in an agreed entry that was executed by a Huntington representative, Berardinelli, Consolo, David, and Sullivan. The agreed entry states, in relevant part:

The parties agree that the sum of [$1,000,000] should be invested in what is titled a "Settlement Preservation Trust." [Huntington,] as guardian of the estate, will be the grantor of the Trust as Guardian and will also be the beneficiary of the Trust until the time [Hammon] reaches the age of majority. Upon reaching the age of majority, [Hammon] will become the beneficiary of the income from the Trust, which is currently projected to be approximately [$85,000] per year. This income stream will continue until [Hammon] reaches the age of [35] at which time the income will cease and the original principal investment of [$1,000,000] will revert to [Hammon].

{¶8} On June 8, 2000, Consolo filed a motion to accept this undated agreed entry. Attached to the agreed entry was an unsigned schedule of payments sheet that lists a "guaranteed payout" of $1,950,745 and "annual benefits" of

> $85,815 per year, guaranteed payable for 23 years. First payment is [November 2, 2000]. Last payment is [November 2, 2022]. This is 23 guaranteed annual payments, and then payments stop.

{¶9} The payment sheet also notes a "lump sum benefit[] payable [November 2, 2023]" of "$1,000,000." The motion to accept this agreed entry was withdrawn by counsel in December 2000.

{¶10} In July 2000, Huntington entered into a trust agreement with Morgan Chase Trust Company ("Morgan Chase") entitled the "Zachary Hammon Settlement Preservation Trust" ("SPT 1"). This first trust was funded with $1 million. The

"schedule of payment instructions" attached as Schedule C to the SPT 1 document is very similar to the payment schedule attached to the agreed entry. It provides for "$84,815 annually for 23 years. Payments to commence on November 2, 2000" and "$1,000,000 lump sum paid on November 2, 2023." However, unlike the payment schedule attached to the agreed entry that provided for "guaranteed" annual and lump sum payments, the SPT 1 document states:

> Grantor [HNB] acknowledges that Trustee [First Capital] and the Trust Service Administrator and the custodian [sic] have not made any guarantee with regard to investment return, investment performance of the Trust nor as to the payments set forth in Schedule C attached hereto.

{¶11} In January 2005, Huntington entered into a second trust agreement with Morgan Chase also entitled the "Zachary Hammon Settlement Preservation Trust" ("SPT 2").[3] SPT 2 was funded with $500,000. Addendum C attached to the SPT 2 document, captioned "Grantor's Request for Payments" provided:

{¶12} Periodic Distributions:

$33,307.89 paid annually to the Beneficiary [Hammon] for 18 years. Payments to commence [May 2, 2008] (age 18) and continue to and including [May 2, 2023] (age 35). * * * $500,000.00 lump sum payment paid to [Hammon] on [November 2, 2023] (age 35).

{¶13} SPT 2 contains similar "no guarantee" language to that of SPT 1:

---

[3]In 2006, Morgan Chase became First Capital.

The Beneficiary [HNB] further acknowledges that neither the Trustee [First Capital] nor the Custodian have made any guarantee of investment return, investment performance of the Trust, or of the ability of the Trustee to make a future distribution(s) contemplated under the Trust.

{¶14} Addendum C states that "[v]ariations in investment returns from those anticipated may cause the schedule of payments shown above to be higher or lower than those shown."

{¶15} Hammon turned 18 years old in September 2006. On January 24, 2007, Huntington filed its final account as guardian for the period from October 1, 2003 to September 4, 2006. The account shows assets and receipts totaling $2,080,774.52, disbursements of $369,180.57, and a resulting balance of $1,711,594.000. This accounting lists the following assets: Hammon and Berardinelli's home at a market value of $251,000; SPT 1, with a market value of $509,038.00; and SPT 2, with a market value of $487,127.

{¶16} On January 27, 2007, Hammon signed a ward's receipt acknowledging (1) receipt of $1,711,594; (2) approving the Final Account; and (3) "approv[ing] any Guardian or Attorney fees therein, which require [Hammon's] approval." The probate court approved the final account in March 2007 and terminated the guardianship.

{¶17} Hammon's second amended complaint explains that his father, David, was in prison from February 2000, "shortly after he and his attorney advocated for a guaranteed investment," until May 2002, and then again from September 2004 until

January 2011. His mother, Berardinelli, had issues with drug addiction and died in February 2009. The second amended complaint alleges that despite the termination of the guardianship in March 2007, all defendants continued to act on Hammon's behalf as the bulk of the estate funds were still invested in SPT 1 and SPT 2 after termination of the guardianship.

{¶18} Hammon alleges that on May 7, 2009, his attorney at the time sent an email to a First Capital representative seeking confirmation as to whether payments under SPT 1 and SPT 2 were fixed or variable and whether there was any return of the principal. He alleges that First Capital did not respond to this inquiry.

{¶19} In November 2009, Huntington sent a letter to Hammon advising him that "the investment products purchased from First Capital (formerly Morgan Chase) had not performed as anticipated" and recommending that Hammon consult with an attorney. Hammon acknowledges that he did consult with two separate attorneys in 2009 and 2010, but alleges that the efforts of these attorneys to investigate the performance of SPT 1 and SPT 2 were thwarted by the defendants. He asserts that he was finally informed in June 2013, by one or more of the defendants, that neither SPT 1 nor SPT 2 guarantee any specific annual income nor the return of the principal.

{¶20} Based upon these allegations, Hammon asserted the following claims against Huntington in the second amended complaint: breach of contract (Counts 1 and 8), negligence (Count 2), breach of fiduciary duty (Count 3), fraud (Count 4), civil conspiracy (Count 5), conversion (Count 7), and violations of the Uniform Prudent

Investor Act ("UPIA") (Count 9). Hammon also asserted claims of breach of contract, fraud, civil conspiracy, conversion, and violations of the UPIA against First Capital (Counts 4, 5, 6, 8, and 9) and fraud, civil conspiracy, and conversion against Consolo (Counts 4, 5, 6, and 7).

{¶21} After the filing of the second amended complaint, this matter proceeded on a parallel track with the inactive guardianship case. The trial court's judgment entry explains that in March 2014, Hammon moved the probate court to vacate its March 2007 order approving the final account. In late 2014, all three defendants in the adversarial proceeding separately moved for dismissal under Civ.R. 12(B)(6) of the second amended complaint. Huntington's motion to dismiss was also styled "in the alternative" as a motion for summary judgment. In December 2015, Hammon moved for the funds of SPT 1 and SPT 2 to be released to him. In September 2015, Hammon filed a suggestion of recusal of the judges of the probate court. Both Cuyahoga County Probate Court judges recused themselves, and a visiting judge was appointed over the inactive guardianship case and the present adversarial proceeding.

{¶22} The trial court denied the motion to vacate the order approving the final account of the guardianship estate in February 2016, but granted the motion to release the trust funds to Hammon in March 2016. Hammon moved the trial court to reconsider its denial of his motion to vacate the order approving the final accounting. The trial court denied his motion to reconsider in May 2016.

**{¶23}** In September 2016, the trial court held a hearing on the motions to dismiss, heard oral argument from counsel for all parties, and subsequently issued a judgment entry granting all three motions, dismissing the second amended complaint in its entirety.

**{¶24}** It is from this order that Hammon now appeals, raising the following three assignments of error for our review:

## Assignment of Error One

The trial court erred in dismissing [Hammon's] second amended complaint, because (1) it wrongfully and erroneously concluded that his breach of contract claims were tort claims, and (2) it considered evidentiary materials outside of the complaint.

## Assignment of Error Two

The trial court erred in dismissing the fraud and breach of trust claims, because even if the trigger dates of January 27, 2007 and May 7, 2009 are lawfully considered trigger dates, then the record still does not support the proposition that Hammon knew or reasonably should have known that [Huntington, First Capital, and Consolo] caused damages to him by their fraudulent conduct.

## Assignment of Error Three

The trial court erred in considering numerous materials outside of the complaint, in ruling upon the 12(B)(6) motions that were filed by all defendants.

**{¶25}** For ease of analysis, we consider these assignments of error together.

## Claims against Huntington

**{¶26}** In the first and third assignments of error, Hammon argues that the trial court erred in considering the evidentiary materials attached to Huntington's motion to

dismiss and improperly granted Huntington's motion. We note that Huntington styled its motion to dismiss "in the alternative" as a motion for summary judgment and put forth res judicata and statute of limitations defenses to Hammon's claims.

{¶27} In considering a motion to dismiss a trial court cannot consider facts outside the pleadings, unless the parties are first provided with notice that the motion is being converted into a motion for summary judgment and afforded an opportunity to respond in accordance with Civ.R. 56. *Redmond v. Sberna*, 8th Dist. Cuyahoga No. 68529, 1996 Ohio App. LEXIS 2187, at *7 (May 23, 1996). Notice is required to give parties a reasonable opportunity to demonstrate whether a genuine issue of fact exists. *Id.*

{¶28} Hammon argues that the trial court never notified the parties that Huntington's motion to dismiss would be converted into a motion for summary judgment and denied him the opportunity to conduct any discovery. He contends "[t]herefore, this is truly a [Civ.R.] 12(B)(6) case, and the court cannot look at any evidentiary materials outside of the complaint."

{¶29} In *Redmond*, this court considered whether notice of conversion is required when a motion to dismiss is also styled as an alternative motion for summary judgment. We held:

> [T]here is no conversion of a motion to dismiss when a party moves to dismiss or, in the alternative, for summary judgment. The "in the alternative" styled motion provides all the notice necessary to the non-moving party because, on its face, it constitutes a motion to dismiss and a motion for summary judgment. Therefore, notice is not necessary when a motion to dismiss or, in the alternative, for summary judgment is filed, and the non-moving party acknowledges the dual nature of the motion and responds with countervailing evidentiary materials.

(Internal Citations Omitted.) *Id*. at \*7-8, citing *Applegate v. Fund for Constitutional Govt*., 70 Ohio App.3d 813, 816, 592 N.E.2d 878 (10th Dist.1990).

**{¶30}** Here, Hammon responded to Huntington's motion with countervailing evidentiary materials. To his reply brief, Hammon attached the affidavits of the attorneys who investigated the guardianship account on his behalf in 2009 and 2010. Each affidavit incorporated and referenced attached correspondence from each attorney to representatives of Huntington and First Capital.

**{¶31}** Accordingly, we review Huntington's motion under the summary judgment standard of Civ.R. 56. Our standard of review under Civ.R. 56 is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club*, 82 Ohio St. 367, 369-370, 696 N.E.2d 201 (1998):

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

**{¶32}** Once the moving party satisfies its burden, the nonmoving party "may not

rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(D); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

## Res Judicata

{¶33} The trial court found that the March 2007 order approving the final account in the guardianship case is res judicata as to Huntington's administration of the estate and bars Hammon's breach of contract, negligence, breach of fiduciary duty, fraud, and conversion claims in Counts 1, 2, 3, 4, 7, and 8, because these claims "all arise out of the guardianship." The trial court explained in its entry that it had denied Hammon's motion to vacate the order approving the final account in the guardianship case and had also denied his motion to reconsider that ruling. The trial court also noted that Hammon did not appeal either ruling.

{¶34} This court has held that "R.C. 2109.35 * * * provides that an order of Probate Court upon the settlement of a fiduciary's account has the effect of a judgment and may only be vacated as provided in that statute." *Ziechmann v. Adomitis*, 8th Dist. Cuyahoga No. 50264, 1986 Ohio App. LEXIS 5965, at *7 (Mar. 13, 1986); *see also In re Skrzyniecki*, 118 Ohio App.3d 67, 67, 691 N.E.2d 1105 (6th Dist.1997) (holding that a probate court's approval of the final account is res judicata on the issue of whether the

guardian properly administered a ward's estate.).

**{¶35}** Under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995). Thus, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. *Strode v. Phillips*, 8th Dist. Cuyahoga No. 84838, 2005-Ohio-2827, ¶ 11, citing *Trojanski v. George*, 8th Dist. Cuyahoga No. 83472, 2004-Ohio-2414, ¶ 8.

**{¶36}** In the order approving the final accounting of the guardianship, the probate court found:

[T]he fiduciary [Huntington] has fully and lawfully administered the * * * guardianship * * * and has distributed the assets thereof in accordance with the law or the instrument governing distribution and that the final account should be settled and approved and the fiduciary discharged.

**{¶37}** Hammon argues that this order does not act as res judicata to bar his claims premised upon the agreed entry. He asserts that neither he nor his attorney at the time of the winding up of the guardianship knew that "there was a contract for guaranteed investment" and, therefore, his claims premised upon the agreed entry could not have been litigated in the guardianship case. Hammon differentiates between Huntington's administration and accounting of the guardianship and the assurances allegedly made by

Huntington representatives to his parents that the terms of SPT 1 would guarantee yearly income and return of the $1 million principal.

{¶38} We agree with Hammon that Counts 1 and 4 of his second amended complaint, which he styles as breach of contract and fraud, respectively, do not relate to Huntington's administration of his estate. In both Counts 1 and 4, Hammon alleges that Huntington representatives made assurances to his parents that estate funds would be invested in a manner that guaranteed a return of the principal amount to Hammon when he reached the age of 35. Although Hammon's allegations in Counts 1 and 4 arise out of the guardianship, these alleged assurances were not the subject matter of the guardianship proceeding and are separate and distinct from the probate court's determination that Huntington lawfully administered Hammon's estate. Therefore, we find that Hammon's claims in Counts 1 and 4 are not barred by res judicata.

Applicable Statute of Limitations

{¶39} In his first assignment of error, Hammon argues that the trial court erred in concluding that Count 1, which he argues was a "very clearly pled contract claim," sounded in tort. He contends that the trial court improperly applied the four-year statute of limitations under R.C. 2305.09 to this claim rather than the 15-year statute of limitations under former R.C. 2305.06.

{¶40} The Ohio Supreme Court has explained that

statutes of limitations serve a gate-keeping function for courts by (1) ensuring fairness to the defendant, (2) encouraging prompt prosecution of causes of action, (3) suppressing stale and fraudulent claims, and (4) avoiding the inconveniences engendered by delay _ specifically, the difficulties of proof present in older cases.

*Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 10. Statutes of limitations are remedial in nature and are to be given a liberal construction to permit cases to be decided upon their merits, after a court indulges every reasonable presumption and resolves all doubts in favor of giving, rather than denying, the plaintiff an opportunity to litigate. *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, ¶ 7.

{¶41} We determine the applicable statute of limitations for a claim from the "gist of the complaint," and not from the label that a party may assign to a set of facts. *Dottore v. Vorys, Sater, Seymour & Pease, L.L.P.*, 8th Dist. Cuyahoga No. 98861, 2014-Ohio-25, ¶ 35, citing *Hibbett v. Cincinnati*, 4 Ohio App.3d 128, 131, 446 N.E.2d 832 (1st Dist.1982). The Ohio Supreme Court has held that when determining which statute of limitations should be applied to a particular cause of action, "courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors[;] the form is immaterial." *Lawyer's Coop. Pub. Co. v. Muething*, 65 Ohio St.3d 273, 277-278, 603 N.E.2d 969 (1992), citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

{¶42} In Count 1, Hammon alleges breach of contract against Huntington on the basis of the agreed entry. We agree with the trial court's determination that this claim sounds in tort and that the four-year statute of limitations for fraud claims under R.C. 2305.09 applies. Hammon specifically alleges that he, through others acting on his

behalf, reached an agreement with Huntington that it would take control of $1 million of estate funds and return to him guaranteed yearly payments and a guaranteed return of the principal at the age of 35, as outlined in the agreed entry.

{¶43} We note that

[a] contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.

*Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting

*Perlmuter Printing Co. v. Strome, Inc.*, 436 F. Supp. 409, 414 (N.D.Ohio 1976).

{¶44} We find that the agreed entry cannot be construed as a contract by virtue of Huntington's position as guardian of the estate at the time of the agreed entry. R.C. 2111.14 sets forth the duties of the guardian of the estate. *In re Skrzyniecki*, 118 Ohio App.3d 67, 71, 691 N.E.2d 1105 (6th Dist.1997). These duties include, among other things, "manag[ing] the estate for the best interest of the ward." R.C. 2111.14(A)(2). The probate court is the "superior guardian," and other guardians "shall obey all orders of the court that concern their wards or guardianships." *See In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471, 933 N.E.2d 1067, ¶ 52; R.C. 2111.50(A)(1). Because the probate court is the superior guardian, the appointed guardian is simply an officer of the court subject to the court's control, direction, and supervision. *Id.*, citing *In Re: Daugherty*, 7th Dist. Columbiana Nos. 83-C-24 and 83-C-29, 1984 Ohio App. LEXIS 9329, at *1-2 (Mar. 9, 1984).

{¶45} We note that during the time period Hammon alleges Huntington made

assurances of guaranteed investment returns to his parents, Huntington already had control of Hammon's settlement funds by virtue of its position as guardian of his estate. Therefore, the alleged agreement between Hammon and Huntington lacks consideration, an essential element of a contract. *See Kostelnik* at ¶ 16. Ultimately, Huntington's investment of estate funds was subject to the control of the probate court. Therefore, any assurances made by Huntington representatives to Hammon's parents and their counsel that estate funds were placed in a guaranteed investment when the final trust document provided otherwise would amount to fraud rather than a contract for a guaranteed investment.

{¶46} Moreover, Hammon reiterates the factual allegations of Count 1 in his Count 4 fraud claim against all defendants based upon alleged representations made to his mother, father, and Attorney Sullivan. Accordingly, Count 1 of Hammon's complaint is subsumed into his fraud claim in Count 4.

Discovery of Fraud

{¶47} In his second assignment of error, Hammon aruges that the record does not support that he knew or should have known of his fraud claim against Huntington prior to November 2009, and accordingly, the trial court erred in dismissing his fraud claim on the basis of the statute of limitations. We agree with Hammon that the limited record before us does not support dismissal of his fraud claim against Huntington on the basis of the statute of limitations.

{¶48} The Ohio Supreme Court has held that "[a] cause of action for fraud or

conversion accrues either when the fraud is discovered, or [when] in the exercise of reasonable diligence, the fraud should have been discovered." *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 29, citing *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 546 N.E.2d 206 (1989), paragraph 2b of the syllabus; *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 76, 491 N.E.2d 1101 (1986). When determining whether the exercise of reasonable diligence should have discovered a case of fraud, the relevant inquiry is whether the facts known "'"would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry * * *."'" *Id*., quoting *Hambleton*, 12 Ohio St.3d 179, 181, 465 N.E.2d (1984).

{¶49} "This standard does not require the victim of the alleged fraud to possess concrete and detailed knowledge, down to the exact penny of damages, of the alleged fraud; rather, the standard requires only facts sufficient to alert a reasonable person of the possibility of fraud." *Id.*, quoting *Palm Beach Co. v. Dun & Bradstreet*, 106 Ohio App.3d 167, 171, 665 N.E.2d 718 (1st Dist.1995). "*[C]onstructive* knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." (Emphasis sic.) *Id.,* quoting *Flowers v. Walker*, 63 Ohio St.3d 546, 549, 589 N.E.2d 1284 (1992).

{¶50} In its judgment entry, the trial court found that Hammon's fraud claim was barred by the statute of limitations because he knew or should have known of the basis for this claim in January 2007, when he signed a receipt of the final accounting. The trial court found that at that time, "a reasonably prudent individual knew or should have

known that [SPT 1 and SPT 2] had not performed as anticipated." The trial court also found "[a]pparently [Hammon] believed that when he contracted with [a law firm in early 2009] to represent him for potential negligence, conversion, breach of fiduciary duty, unjust enrichment, fraudulent conveyance and other related claims."

{¶51} We find that the trial court's discovery rule analysis conflates Hammon's fraud and breach of fiduciary claims against Huntington. As we discussed above, Hammon's fraud claim is premised upon the agreed entry and alleged assurances of guaranteed return of the principal that are separate and distinct from the actual investment performance of the trusts and Huntington's administration of Hammon's estate.

{¶52} Hammon alleges that he and his family relied upon representations by Huntington representatives that return of the principal amounts of the SPT 1 and SPT 2 trusts were guaranteed. He contends that he did not discover until June 2013 that neither SPT 1 nor SPT 2 guaranteed any specific annual income nor the return of the principal. Accordingly, the overall values of SPT 1 and SPT 2 in January 2007, at the time of the final accounting of the guardianship, may not have given Hammon, his family, or counsel, reason to believe that he would ultimately not receive the return of the principal amount.

{¶53} Hammon admits in his complaint that on May 7, 2009, Christopher Vlasich ("Vlasich"), his attorney at the time, sent an email to a First Capital representative, seeking confirmation as to whether the payments under SPT 1 and SPT 2 were fixed or variable and whether there was any return of the principal, but he contends that First

Capital did not respond to this inquiry. To his reply to Huntington's motion, Hammon attached the affidavit Vlasich who represented him in 2009. Vlasich stated that the focus of his firm's investigation related to the distributions made by the court-appointed guardians, National City, and Huntington, primarily as they related to Hammon's mother, Berardinelli. Vlasich further stated that he "reviewed an Agreed Entry attached to a Motion to Accept Agreed Entry * * * and [SPT 1 and SPT 2] in an attempt to determine whether payments made thereunder were fixed or variable and whether there would be any return of principal." He reiterates Hammon's allegation that he emailed a First Capital representative in May 2009 to determine whether Hammon could expect to return of the principal, but he did not receive a response.

{¶54} Considering all the evidence in the limited record before us in a light most favorable to Hammon, we cannot conclusively determine that Hammon should have discovered the alleged fraud and the conflicting terms of the agreed entry from SPT 1 and SPT 2 in May 2009. The record does not reflect that Attorney Vlasich was aware that Hammon and his family relied on assurances of guaranteed return of the trust principal as evidenced by the agreed entry, nor does the record reflect, as the trial court states, what "Hammon believed * * * when he contracted with [Vlasich's] law firm in 2009." Moreover, the record is not clear when Hammon was alerted to the inconsistencies between the agreed entry and SPT 1 and SPT 2.

{¶55} Based on the foregoing, we find that reasonable minds could come to more than one conclusion as to when Hammon should have discovered the basis of the alleged

fraud claim. Accordingly, we find that the trial court erred in dismissing of Hammon's fraud claim against Huntington.

Claims against First Capital and Consolo

{¶56} Throughout his brief, Hammon argues that the trial court improperly relied on evidentiary materials outside the complaint and misapplied the discovery rule to his fraud claims against First Capital and Consolo and his breach of trust claim against First Capital. He also argues that the trial court misconstrued his breach of contract claim against First Capital as a breach of trust claim.

{¶57} We note that First Capital and Consolo moved under Civ.R. 12(B)(6) only. Therefore, the trial court was confined to Hammon's second amended complaint in considering their motions.[4]

{¶58} We review an order dismissing a complaint for failure to state a claim for relief under Civ.R. 12(B)(6) de novo. *Schmitz v. NCAA*, 2016-Ohio-8041, 67 N.E.3d 852, ¶ 9 (8th Dist.). In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6), it must appear beyond doubt

---

[4] First Capital's argument that the trial court could take judicial notice of the guardianship case is misplaced because the guardianship is a seperate proceeding from the present adversarial case. This court has held that a trial court, in considering a Civ.R. 12(B)(6) motion to dismiss, "cannot take judicial notice of prior proceedings in another case" and "may not take judicial notice of prior proceedings in the court even if the same parties and subject matter are involved." *NorthPoint Properties v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 16 (8th Dist.), quoting *Campbell v. Ohio Adult Parole Auth.*, 10th Dist. Franklin No. 97APE05-616, 1997 Ohio App. LEXIS 4829, at *4 (Oct. 28, 1997); *First Michigan Bank & Trust Co. v. P. & S. Bldg.*, 4th Dist. Meigs No. 413, 1989 Ohio App. LEXIS 527, at *8 (Feb. 16, 1989).

from the complaint that the plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ.*

*Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 244, 327 N.E.2d 753 (1975), syllabus. In construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).

Under these rules, a plaintiff is not required to prove his or her case at the pleading stage. * * * Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.

*Schmitz*, ¶ 9, quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991).

**{¶59}** Under Ohio's liberal pleading rules, all that is required of a plaintiff bringing suit is "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." *Id*. at ¶ 10, quoting Civ.R. 8(A). Unlike other claims, however, fraud claims must be plead with particularity as required under Civ.R. 9(B). *Id*.

**{¶60}** It is well established that "[a] motion to dismiss based on the bar of the statute of limitations is erroneously granted when the complaint does not conclusively show on its face the action is barred by the statute of limitations." *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 433 N.E.2d 147 (1982), paragraph three of the syllabus.

{¶61} In the first assignment of error, Hammon argues that the trial court erred in finding that Count 8 constituted a breach of trust claim as pled against the trustee, First Capital. Hammon frames Count 8 as a breach of contract claim. In Count 8, Hammon alleges that First Capital breached the terms of the SPT 1 and SPT 2 trust documents by its failure to prudently invest trust assets according to the terms of the trusts and its failure to recalculate annual trust payments so as to preserve the principal.

{¶62} We recognize that "[i]t is well settled that every violation by a trustee of a duty which equity lays upon him, whether willful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust." *KeyBank Natl. Assoc. v. Thalman*, 8th Dist. Cuyahoga No. 102624, 2016-Ohio-2832, ¶ 15, quoting *Shuster v. N. Am. Mtge. Loan Co.*, 139 Ohio St. 315, 343, 40 N.E.2d 130 (1942). The Tenth District has held:

A trustee's duties emanate from the nature of the trust, not from any specific contractual language resulting from a contract-like "meeting of the minds" and imposing legal duties to perform certain acts. A trustee who fails to perform his duties as a trustee is not liable to the beneficiary for breach of contract because the creation of a trust is "a conveyance of the beneficial interest in the trust property rather than a contract."

*Cassner v. Bank One Trust Co., N.A.*, 10th Dist. Franklin No. 03AP-1114, 2004-Ohio-3484, ¶ 26-27, quoting Restatement of the Law 2d, Trusts, Section 197, Comment b (1959).

**{¶63}** Here, Hammon alleges that First Capital breached the terms of the SPT 1 and SPT 2 documents. Based on the foregoing, Count 8 is necessarily a breach of trust claim as pled against First Capital.

**{¶64}** First Capital argues that, under the terms of SPT 1 and SPT 2, South Dakota law should apply to Hammon's breach of trust claim. South Dakota law provides a two-year statute of limitations for breach of trust claims. *See* S.D.Codified Laws 15-2-36.

**{¶65}** The trial court, however, applied Ohio law in analyzing Hammon's breach of trust claim. Under Ohio law, the relevant statute of limitations for breach of trust claims is R.C. 5810.05, which provides in relevant part:

(A) A beneficiary may not commence a proceeding against a trustee for breach of trust more than two years after the date the beneficiary, a representative of the beneficiary, or a beneficiary surrogate is sent a report that adequately discloses the existence of a potential claim for breach of trust and informs the beneficiary, the representative of the beneficiary, or the beneficiary surrogate of the time allowed for commencing a proceeding against a trustee.

* * *

(C) If division (A) of this section does not apply * * * a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within four years after the first of the following to occur:

* * *

(4) The time at which the beneficiary knew or should have known of the breach of trust.

**{¶66}** It is not clear from the face of the complaint whether Hammon, his representative, or surrogate was sent a report disclosing the basis of his breach of trust claim and that R.C. 5810.05(A) applies here. Therefore, we apply the four-year statute

of limitations under division (C). We find that the statute of limitations began to run, at the very latest, when Huntington advised Hammon that the trusts "had not performed as anticipated" on November 2, 2009. The savings statute, R.C. 2305.19, specifically states that it does not apply to an action arising under R.C. 5810.05. Therefore, Hammon's filing of his initial complaint in the adversarial proceeding controls, rather than his September 2013 filing in the common pleas court. Hammon filed his initial complaint in the present matter on February 20, 2014, more than four years after November 2, 2009. Therefore, Hammon's breach of trust claim against First Capital is time barred under the laws of both South Dakota and Ohio.

{¶67} We note that the trial court stated that it relied on materials outside the complaint in dismissing Hammon's fraud claim against First Capital on the basis of statute of limitations. This error is harmless because Hammon failed to plead his fraud claim against First Capital with sufficient particularity under Civ.R. 9.

{¶68} In the second amended complaint, Hammon does not identify anyone from First Capital who was involved in the alleged negotiations that led to the agreed entry, nor does he identify any specific fraudulent statements made by First Capital representatives to his parents or their counsel. Hammon merely alleges that "representatives of [First Capital], flew in a representative to Cleveland to attend the [February 2000] hearing" and includes First Capital in his general allegations against all defendants. Moreover, we note that the agreed entry does not identify First Capital as a party, nor is it signed by any First Capital representative.

{¶69} We also note that the trial court dismissed the fraud claim against Consolo for lack of particularity under Civ.R. 9. Hammon does not assign any error to this finding. Accordingly, we find the trial court properly granted the 12(B)(6) motions to dismiss First Capital and Consolo.

{¶70} Based on the foregoing, we find that the trial court committed reversible error by dismissing Hammon's fraud claim against Huntington because genuine issues of material fact exist as to Hammon's discovery of the alleged fraud. Although the trial court erroneously relied on the materials outside the complaint in granting the Civ.R. 12(B)(6) motion of First Capital, this error was harmless because Hammon did not plead his fraud claim against First Capital with particularity. Accordingly, Hammon's first, second, and third assignments of error are sustained in part and overruled in part.

{¶71} Therefore, we affirm the trial court's grant of the Civ.R. 12(B)(6) motions to dismiss of First Capital and Consolo as well as the trial court's dismissal of Counts 2, 3, 5, 6, 7, 8, and 9 against Huntington. We reverse the trial court's dismissal of Hammon's fraud claim in Counts 1 and 4 against Huntington. This matter is remanded to the probate court for further proceedings.

{¶72} Judgment affirmed in part and reversed in part.

It is ordered that appellant recover of appellee, Huntington National Bank, costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR