## In re GUARDIANSHIP OF SKRZYNIECKI.

[Cite as *In re Guardianship of Skrzyniecki* (1997), 118 Ohio App.3d 67.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–034.

Decided Jan. 31, 1997.

*Melvin H. Banchek*, for appellant Whitecliff Manor Health Care Center.

*Edward F. Zoltanski*, for appellee Walter Borkowski.

*Andrew J. Ayers*, for appellee State Farm Fire & Casualty Company.

---

*Per Curiam.*

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Probate Division, which in relevant part denied the motion of appellant, Whitecliff Manor Nursing Home, to surcharge the guardian of the person and estate of Francis Skrzyniecki.

The relevant facts of this case are set forth in stipulations of fact which were agreed to and filed by the parties in the proceedings below. Those stipulations read:

"1. For 25 years, Walter Skrzyniecki served as the guardian of Francis Skrzyniecki.

"2. Walter Borkowski was appointed successor guardian in November, 1991, when Walter Skrzyniecki could no longer serve as guardian.

"3. Francis Skrzyniecki was a private pay resident of Whitecliff Manor Nursing Home since July 1, 1986.

"4. Walter Borkowski, as guardian, paid the monthly bill of Whitecliff Manor Nursing Home out of the Estate of Francis Skrzyniecki.

"5. Walter Borkowski, as guardian, signed the admission agreement with Whitecliff Manor Nursing Home.

"6. In the Summer of 1994, Walter Borkowski called the Department of Human Services for Cuyahoga County to request an application for Medicaid because the resources of Francis Skrzyniecki were close to being depleted. At that time, Walter Borkowski learned that Francis Skrzyniecki's resources still exceeded the limit permitted to qualify for Medicaid under the Department of Human Services guidelines.

"7. In the Fall of 1994, Walter Borkowski, as guardian of Francis Skrzyniecki, completed an application for Medicaid which was rejected because Francis Skrzyniecki's resources, including stock having a value in excess of $1,500, still exceeded the limit permitted to qualify for Medicaid under the Department of Human Services guidelines.

"8. Walter Borkowski then liquidated the remaining assets of Francis Skrzyniecki.

"9. The spenddown of these assets was completed in November, 1994.

"10. Having depleted Francis Skrzyniecki's resources, in December, 1994, Walter Borkowski, as guardian, filed an application for Medicaid on behalf of Francis Skrzyniecki which was approved.

"11. Due to the depletion of Francis Skrzyniecki's assets, he was a resident of the Whitecliff Manor Nursing Home for several months, incurring expenses which were not paid due to his ineligibility for Medicaid.

"12. During the time period for which the monthly bills to Whitecliff Manor Nursing Home were not paid, the Medicaid rate for reimbursement was:

$106.30 for April, May and June, 1994;

$108.14 for July, August and September 1994;

$106.83 for October, November and December, 1994.

"14 [*sic* ]. The bond filed by Walter Borkowski as guardian in this case is $120,000.00 issued by State Farm Fire & Casualty Company."

The record of the proceedings below contains the following additional facts.

On August 22, 1994, Borkowski filed an application with the lower court to terminate the guardianship of the estate of the ward. The application represented that the ward's income was less than $1,200 per month, that his expenses exceeded $2,500 per month, that the guardianship checking account then contained less than $1,600, and that the guardian was redeeming the ward's stock, which had a value of less than $2,000. The guardian also asserted that he had applied for Medicaid on behalf of the ward and that because the assets of the ward had been depleted, he requested that the guardianship of the estate be terminated and that he, be permitted to pay up to $1,500 to the ward and have Medicaid pay for the ward's nursing home care. On that same day, the court granted the application to terminate the guardianship of the estate upon approval of the final account, which the court ordered to be filed within thirty days. Thereafter, on September 15, 1994, the guardian filed an application to extend the time period for filing the final account, citing the following reason:

"[T]he estate assets included 6 shares of stock of Pfizer Co. which the Guardian never had, the predecessor Guardian never had, and it has become necessary to file the indemnity bond with this publicly traded corporate stock. An attempt to have this certificate replaced by the Pfizer Company has been attempted, but it is taking time. After the replacement certificate is obtained, it will have to be sold; which will require additional time."

The lower court granted the. application to extend, and on November 21, 1994, appellant Whitecliff Manor Nursing Home filed a motion to remove the guardian and to surcharge. In its accompanying brief, appellant asserted that the guardian had not paid for the ward's nursing home care and that as of the date of the motion, the guardian owed appellant $30,574.12 for the ward's care. Appellant then asked that the court order a surcharge against the guardian and his bonding company, appellee State Farm Fire & Casualty Company.

On November 28, 1994, the guardian filed a second application to extend the time for filing the final account. The guardian stated:

"Shares of Stock in Pfizer Inc. were recently sold and the check for these was received during the week of November 21, 1994; and it was deposited into the Guardian's Account. An application to pay the Ward 1500 [*sic* ] was filed, and the Guardian is waiting for Court authorization, after which the money will be paid to the Ward into a bank account, and thereafter a final account will be prepared to close this case."

The trial court again granted the application to extend. On January 23, 1995, the guardian filed the final account of the ward's estate covering the time period of September 22, 1993 through December 20, 1994. No exceptions to the account were filed.

Subsequently, State Farm filed a motion to dismiss the motion to remove the guardian and a motion to surcharge, which was joined by the guardian. Essentially, State Farm asserted that because the guardian's actions had no detrimental effect on the estate of the ward, and because the guardian had filed an accurate and just account of the ward's assets and disbursements, the probate court did not have the authority to surcharge the guardian and bonding company for the amount due appellant. Appellant responded with a brief in opposition which was supported by the affidavit of Edith Kupay, the assistant administrator of Whitecliff Manor Nursing Home. Kupay confirmed that appellant was then due $21,509.24 for expenses relating to the care of the ward.

On September 27, 1995, the lower court filed an order approving the final account of the guardianship. Specifically, the court found that the final account was just and correct and in conformity to law and that "said fiduciary has fully and lawfully administered the ESTATE and has distributed the assets thereof in accordance with the LAW as shown in said account."

The court then ordered that the final account be approved and settled and that the guardian of the estate be discharged. The lower court proceeded to review the motions to remove the guardian and for surcharge.

On November 2, 1995, the magistrate filed a decision finding the motions not well taken. Specifically, the magistrate found that the final account was filed by the guardian on January 25, 1995, that the account was approved on September 27, 1995, that no exceptions had been filed to the account, and that appellant had not provided any proof of the debt. The magistrate further noted that the guardianship of the estate had been terminated since the final account had been approved. Appellant responded to the decision by filing timely objections. On December 27, 1995, however, the lower court filed a judgment entry finding the objections not well taken and approving the decision of the magistrate. From that judgment, appellant now appeals, raising the following assignment of error:

"The Probate [sic] erred when it dismissed Whitecliff Manor's Motion to Surcharge the Guardian."

Appellant makes three arguments in support of its assignment of error. We will first address appellant's argument that appellant was not required to file exceptions to the final account to protect its right to challenge the administration of the estate. Appellant has cited several cases from the early part of this

century which it claims support its position. Those cases, however, do not address the applicability of the statutes at issue in this case.

R.C. 2111.13 and 2111.14 set forth the duties of a guardian of the person and the estate of a ward respectively. As to the duties of the guardian of the person, R.C. 2111.13(A)(2) provides that the guardian shall "provide suitable maintenance for his ward when necessary, which shall be paid out of the estate of such ward upon the order of the guardian of the person." Similarly, R.C. 2111.14(C) provides that the duties of the guardian of the estate of the ward include the duty "[t]o pay all just debts due from the ward out of the estate in his hands * * *." If a guardian's negligence results in a debt of the estate, the guardian can be held personally liable for the debt. R.C. 2111.151(B). The guardian of the estate of a ward is required to file annual accounts which "shall include an itemized statement of all receipts of the fiduciary during the accounting period and of all disbursements and distributions made by him during the accounting period." R.C. 2109.30(A). R.C. 2109.32 provides that upon the filing of the account, the probate court is required to set a hearing in order to review the account and states in part:

"At the hearing upon an account, *the court shall inquire into, consider, and determine all matters relative to the account* and the manner in which the fiduciary has executed his trust, including the investment of trust funds, and may order the account approved and settled or make any other order as the court considers proper. If, at the hearing upon an account, the court finds that the fiduciary has fully and lawfully administered the estate or trust and has distributed the assets of the estate or trust in accordance with the law or the instrument governing distribution, as shown in the account, the court shall order the account approved and settled and may order the fiduciary discharged." (Emphasis added.)

R.C. 2109.33, however, allows interested parties to challenge a guardian's account and thereby challenge the manner in which the fiduciary has administered the estate. That statute reads in part:

"Any person interested in an estate or trust may file exceptions to an account or to matters pertaining to the execution of the trust. All exceptions shall be specific and written. Exceptions shall be filed and a copy of them furnished to the fiduciary by the exceptor, not less than five days prior to the hearing on the account."

Whether or not exceptions to the account have been filed, the order of the probate court approving and settling the fiduciary's account has the effect of a final judgment, which can only be vacated under the limited procedures set forth in R.C. 2109.35.

In the proceedings below, appellant filed its motions to remove and surcharge the guardian on November 21, 1994. Appellant asserted that the guardian breached his fiduciary duty and therefore negligently administered the ward's estate by failing to qualify the ward for Medicaid in a timely manner. Appellant argued that the guardian's breach of his fiduciary duty resulted in a debt to appellant. The guardian then filed his final account on January 23, 1995, to which no exceptions were filed. In its review of the final account, however, the probate court was required to determine whether the guardian had fully and lawfully, *i.e.*, non-negligently, administered the ward's estate. Accordingly, in order to properly challenge the guardian's administration of the estate, appellant was required to file exceptions to the final account. Appellant asserts that *In re Edenburg, Incompetent* (May 4, 1995), Cuyahoga App. No. 67064, unreported, 1995 WL 264598, supports its position that the court can impose personal liability upon the guardian for failing to file an account and for failing to file a Medicaid application which would have paid the ward's nursing home charges. We do not dispute that a guardian can be held personally liable for the estate's debts which arose due to his negligence if the issue is properly raised. In *Edenburg,* however, the final account of the guardian had not been settled and approved before the court reviewed the motion to surcharge. See, also, *In re Guardianship of McPheter* (1994), 95 Ohio App.3d 440, 642 N.E.2d 690; *In re Guardianship of Maunz* (1991), 77 Ohio App.3d 760, 603 N.E.2d 1045; *In re Guardianship of Edwards* (Sept. 20, 1996), Ross App. No. 95CA2134 unreported, 1996 WL 557807; and *In re Guardianship of Wammes* (Sept. 15, 1989), Lucas App. No. L-98-012, unreported, 1989 WL 106287.

We therefore conclude that in order to preserve its right to challenge the guardian's administration of the estate of the ward, appellant was required to file exceptions to the guardian's final account. Because appellant did not file such exceptions, the lower court's approval of the final account was *res judicata* on the issue of whether the guardian properly administered the ward's estate. Accordingly, the trial court did not err in dismissing the motion to surcharge, and the sole assignment of error is not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Probate Division, is affirmed. Court costs of this appeal are assessed to appellant.

*Judgment affirmed.*

HANDWORK, GLASSER and SHERCK, JJ., concur.