[Cite as *Mary Ann Lauer Living Revocable Trust v. McManus*, 2025-Ohio-5669.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Mary Ann Lauer Living Revocable
Trust, et al.

Court of Appeals No. L-25-00113

Trial Court No. CI0202302582

Appellants

v.

Kevin McManus, et al.

**DECISION AND JUDGMENT**

Appellees

Decided: December 19, 2025

* * * * *

Donald Gallick, Esq., for appellants/ cross-appellees,
Mary Ann Lauer Living Revocable Trust and Mark Rockwell.

Jason D. Winter, Esq., Courtney J. Trimacco, Esq., and
Katheryn E. Hach, Esq., for appellees/ cross-appellants Kevin McManus, Esq.,
and McManus & McManus.

* * * * *

**SULEK, P.J.**

{¶ 1} This is an appeal and cross-appeal from the judgments of the Lucas County

Court of Common Pleas, which (1) awarded summary judgment to appellees Kevin

McManus and his law firm McManus & McManus (collectively "McManus") on

appellants' the Mary Ann Lauer Living Revocable Trust ("Trust") and its trustee Mark Rockwell (collectively "Rockwell") complaint for legal malpractice, and (2) denied without a hearing McManus's motion for sanctions. For the reasons that follow, the trial court's judgments are affirmed, in part, and reversed, in part.

## I. Factual Background and Procedural History

{¶ 2} Mary Ann Lauer had two children, Mark Rockwell and Tamara Rockwell-Huebner ("Huebner"). During her life, Lauer established the Mary Ann Lauer Living Revocable Trust. Rockwell was designated the successor trustee and was a 70% beneficiary of the Trust. Huebner was a 10% beneficiary, as were her two children. At its creation, the Trust contained only Lauer's home and tangible personal property; the rest of Lauer's assets remained in her possession. Upon Lauer's death in April 2022, her assets transferred into the Trust pursuant to a "pour-over" provision in her will.

{¶ 3} In 2017, Huebner contacted McManus about establishing a guardianship for Lauer. On May 17, 2017, the Lucas County Probate Court deemed Lauer incompetent due to dementia and Alzheimer's Disease and appointed McManus as guardian over Lauer's person and estate. McManus also served as legal counsel for the guardianship. Rockwell retained counsel who appeared on his behalf in the guardianship proceedings.

{¶ 4} As guardian, McManus submitted several accountings to the probate court. The first accounting covered the period from May 11, 2017, to May 14, 2018, and included total disbursements of approximately $200,000. The second accounting covered the period from May 14, 2018, to May 14, 2019, and included total disbursements of

2.

approximately $245,000. The third accounting covered the period from May 14, 2019, to May 14, 2020, and included total disbursements of approximately $240,000. A fourth accounting covered May 14, 2020, to May 14, 2021, and included total disbursements of approximately $200,000. The probate court approved each of the accountings, finding "said account, in all respects, just and correct and in conformity to law."

{¶ 5} Lauer died on April 28, 2022. McManus submitted the final accounting, and it was approved on December 28, 2022. In its entry approving the accounting and closing the guardianship, the probate court again found "said account, in all respects, just and correct and in conformity to law." The court further found that "the said fiduciary has fully and lawfully administered the estate and has distributed the assets thereof in accordance with the law."

{¶ 6} Rockwell did not file exceptions to the first, second, fourth, or final accountings. He did, however, file an exception to the third accounting. In his exception, Rockwell noted that approximately $100,000 was spent on Lauer's full-time care at the Lakes of Monclova. Of the remaining disbursements, approximately $115,000 was paid to three individuals: $27,000 to Huebner, $47,000 to Mary Keyes, and $41,000 to Martha Odom. Rockwell did not believe that the disbursements were for services provided in Lauer's best interest. He further asserted that while he did not have any receipts in support of the current accounting, receipts from the second accounting showed that tens of thousands of dollars were spent on clothes and food, as well as for purchases made in the Bahamas, Maine, and Chicago.

3.

{¶ 7} A hearing on Rockwell's exception to the third accounting was held before a magistrate on May 17, 2021. The following is taken from the magistrate's findings. McManus testified that Lauer has had daytime private aides seven days a week since 2018. Keyes and Odom are the aides, and they get paid $1,700 weekly. They do not have written agreements or submit time sheets, but they work between 8 to 12 hours a day and McManus was unaware of them working less hours. Regarding Huebner's reimbursements, she testified that the expenditures are entirely for her mother and are mostly for food and clothing. During the hearing, she was questioned about many specific receipts and explained the purpose for each one.

{¶ 8} Following the hearing, the magistrate entered his decision denying Rockwell's exceptions and approving the third accounting. The magistrate found that the expenditures have furthered the goals of improving Lauer's health, helping her to gain weight, and improving her appearance, thereby "vastly improv[ing]" Lauer's quality of life. Further, he found that Lauer loves, trusts, and relies on the two aides "and has constant care from [them] when she arises in the morning to when [she] goes to sleep." The aides "make sure she eats, bathes, interacts, goes to church, [and] leaves on holidays." The magistrate also determined that there was no evidence the aides were overpaid or did not earn their wages for "their exemplary care of [Lauer]." Finally, the magistrate found that

> McManus, [Huebner] and Mary Keyes all were consistent with testimony
> that when things were purchased, Mary and Martha signed for them before
> they were given to [Lauer] and said receipts were tallied and given to the

4.

Guardian before reimbursement was allowed. . . . There is only one person who has benefited from the use of the two aides, outside food preparations, church, outings, new clothes and numerous chachkis/baubles and articles of clothing: [Lauer].

McManus did not object to the magistrate's decision, and the probate court adopted it as a judgment on May 27, 2021.

{¶ 9} Simultaneously with his exception to the third accounting, Rockwell filed a "Motion to Change Guardian," seeking to remove McManus as guardian and naming himself as guardian instead. That motion was heard by the magistrate on January 12, 2022.

{¶ 10} As recounted in the magistrate's decision following that hearing, the testimony revealed that prior to the guardianship, Rockwell provided substantial care and assistance to Lauer, and she named him her power of attorney and designated him as her guardian if one was needed. Huebner, however, believed that Rockwell was not providing adequate care as evidenced by the incidents when the police found Lauer wandering through the neighborhood, underweight, disheveled, and wearing tattered clothing. McManus testified that he spoke to a neighbor in 2017 who reported that this was a regular occurrence. Huebner further believed that Rockwell was isolating Lauer, was not taking her to doctor's appointments, and was taking money from her.

{¶ 11} Rockwell, on the other hand, testified that he was taking good care of Lauer before Huebner came and effectively stole her away and placed her in a full-care facility against her wishes. He testified that McManus was not doing his best for Lauer by

5.

allowing her to lay in bed until the aides arrived at 10:00 a.m., writing reimbursement checks to Huebner for greater amounts than Rockwell ever spent, and "turning in incorrect documents to [the probate judge] to get guardianship: I was supposed to be appointed guardian. My attorney emailed him documents but McManus did a switcheroo with the documents."

{¶ 12} On January 21, 2022, the magistrate entered his decision denying Rockwell's motion. The magistrate found no evidence to remove McManus, and that doing so would "be a grave disservice" to Lauer. Further, the magistrate found that the issue of the guardian's performance was res judicata because it had already been determined in the order approving the third accounting and denying Rockwell's exceptions to the same.

{¶ 13} Rockwell objected to the magistrate's order denying his motion to change the guardian. On March 10, 2022, the probate court overruled Rockwell's objections and adopted the magistrate's decision as its own judgment. Notably, the probate court found that the matter of the guardianship over the estate "is already a *res judicata* matter settled by this Court's prior 5/27/2021 Judgment Entry wherein no financial misconduct or irregularities were found with respect to the current guardian's recent accountings or with financial choices made for the benefit of the Ward, which includes expenditures for the Ward's well-being in her current location."

{¶ 14} Rockwell appealed the probate court's March 10, 2022 judgment to this court in case No. L-22-1077. While the appeal was pending, Lauer died. Consequently,

6.

McManus moved to dismiss the appeal. Rockwell opposed the dismissal, arguing that replacement of the guardian was not the only issue before the court. He asserted that the separate issue of his allegations of financial misconduct committed by the guardian should be decided on the merits.

{¶ 15} On December 14, 2022, this court granted McManus's motion and dismissed the appeal, thereby declining to address Rockwell's financial misconduct claims. Specifically, this court reasoned that the probate court's May 27, 2021 judgment, which denied Rockwell's exceptions and approved the third accounting, was a final appealable order, holding that "[b]ecause [Rockwell] failed to appeal the May 27, 2021 judgment settling the account, and also failed to file objections related to any financial misconduct on the part of McManus, we find that any appeal on that issue is barre[d] by res judica[t]a." Furthermore, this court recognized that following the magistrate's decision on the motion to change the guardian, Rockwell did not include any objections based upon fraud. Instead, his objections were based upon whether he was an appropriate caretaker for Lauer and whether Lauer wanted him to be her guardian. This court, therefore, held that "because [Rockwell] only assigns as error issues related to financial misconduct, but failed to object to those findings, [Rockwell] is precluded from raising issues of financial misconduct as error on appeal." This court did note that Rockwell "still has the ability to appeal the judgment on the final accounting and any other statutory remedies available." As stated above, however, Rockwell did not object to or

7.

appeal the judgment on the final accounting, which was approved by the probate court on December 28, 2022.

{¶ 16} Instead, on May 24, 2023, Rockwell initiated the present action by filing a two-count complaint against McManus, his law firm McManus & McManus, and Huebner. The complaint included one count against McManus for legal malpractice "due to the failure to review, question, and investigate expenditures during the guardianship which were obvious not to benefit the ward and deprived funds to [the Trust]." The second count alleged that Huebner served as the guardian to Lauer and breached a fiduciary duty owed to her by misappropriating funds to enrich her friends, take vacations, and go on shopping trips. Huebner filed a counterclaim, asserting causes of action for conversion, breach of the trust agreement and unjust enrichment, declaratory judgment, breach of fiduciary duties as trustee, and for an accounting.

{¶ 17} Upon McManus's request, Rockwell filed a "Statement of Damages Proffered by Plaintiffs" pursuant to Civ.R. 8(A), in which he alleged that McManus "committed gross negligence in submitting hundreds of thousands of dollars worth of questionable receipts, incomplete receipts, and 'cut off' copies." He specifically identified the payments made to Keyes and Odom in 2018, 2019, and 2022, as well as over one hundred different instances of receipts that were submitted for various items.

{¶ 18} On February 28, 2024, McManus moved for judgment on the pleadings, arguing that Rockwell's claim was an impermissible collateral attack on the final judgment of the probate court and was barred by collateral estoppel. McManus asserted

8.

that the issue of whether he acted in an improper or unlawful manner in serving as Lauer's guardian was actually and necessarily litigated and determined in the probate proceedings wherein the probate court found that "all financial actions were taken [by McManus] for the improvement of [Lauer's] condition from 5/11/2017 onwards, which has been accomplished through the Guardianship . . .." On April 9, 2024, the trial court held a hearing via Zoom, following which it summarily denied McManus's motion for judgment on the pleadings.

{¶ 19} After further discovery, including the depositions of Rockwell, McManus, and Huebner, McManus moved for summary judgment. McManus argued, inter alia, that (1) no attorney-client relationship existed with either Rockwell or the Trust, and Rockwell cannot overcome McManus's immunity from liability to third persons by a showing of malice or privity; (2) the complaint is an impermissible collateral attack on the final judgment of the probate court; (3) Rockwell is collaterally estopped from relitigating the propriety of McManus's actions as attorney-guardian; (4) Rockwell waived any objection to McManus's accountings through his failure to raise exceptions to the final guardian's account; (5) Rockwell has not produced an expert report to sustain his claim of legal malpractice; and (6) Rockwell's complaint is barred by the statute of limitations and partially barred by the statute of repose.

{¶ 20} Rockwell opposed the motion for summary judgment, arguing that he filed exceptions to the guardian's accountings, that the probate judge's approval of the guardian's accountings did not absolve McManus of malpractice, and that there was

9.

privity between the guardianship and the Trust. In support of his claim for legal malpractice, Rockwell contended that a factual question existed regarding whether McManus failed to perform his fiduciary duty by not conducting an investigation of "a minimum of $400,000.00 of questionable reimbursements for food, jewelry, clothes, gift cards, 'payroll,' and cash withdrawals." Much of Rockwell's opposition was devoted to the details of various expenditures reimbursed by McManus. Submitted with Rockwell's opposition was an expert report from John Phillips of Phillips Law Firm, Inc. The report contained Phillips's expert opinion that McManus "committed legal malpractice related to the representation of [Lauer] and the [Trust]."

{¶ 21} Rockwell also argued, however, that even if the claim for legal malpractice failed, "the attorney/guardianship could be found liable for a breach of fiduciary duty." Notably, Rockwell did not plead a claim for breach of fiduciary duty against McManus. In his reply, McManus recognized that the single claim against him was for legal malpractice, and he therefore expressly did not address Rockwell's arguments "as [Rockwell's] discussion of this claim has no bearing on the McManus Defendants' pending Motion for Summary Judgment."

{¶ 22} On February 14, 2025, the trial court granted McManus's motion for summary judgment on the count of legal malpractice. It ordered, however, that the count of breach of fiduciary duty would be tried to a jury. The trial court's entry did not contain any discussion of factual findings or legal reasoning.

10.

{¶ 23} After the trial court entered its judgment, Rockwell filed a motion to vacate or for reconsideration, in which he asserted that a pleading error caused "a misunderstanding of which civil claims are levied against which defendant." The motion stated,

> [Rockwell's] counsel mistakenly believed that there were two civil counts against Defendant Kevin McManus: legal malpractice and breach of fiduciary duty and a single count of fraud against Defendant Tamara Huebner-Rockwell. Counsel erroneously believed that he had amended the original complaint and corrected the misnaming error levelling a civil cause of action that accused Tamara Huebner-Rockwell of breach of fiduciary duty as the guardian of Mary Ann Lauer. The only explanation for the error is that the case involved an out-of-state client, a massive amount of records, and that Attorney Gallick could not initially look at court records from the Lorain (sic) County Probate Court because the case was sealed or "locked" prohibiting others from inspecting the docket.

Rockwell requested that the jury trial on the count of breach of fiduciary duty "go forward against Kevin McManus," as the same claim against Huebner would be futile since she was not the guardian. Concurrently with the motion to vacate or for reconsideration, Rockwell filed a motion to amend the complaint to name McManus as the guardian for purposes of the breach of fiduciary duty claim.

{¶ 24} Shortly thereafter, McManus moved for sanctions pursuant to R.C. 2323.51 and Civ.R. 11 against Rockwell and his attorney, alleging that the action was frivolous because (1) McManus never had an attorney-client relationship with Rockwell or the Trust, (2) Rockwell and the Trust were solely residuary beneficiaries without entitlement to any assets expended by the guardianship and therefore lacked standing to sue for legal

11.

malpractice, and (3) the conduct of McManus as guardian had already been fully and favorably adjudicated.

{¶ 25} On April 28, 2025, the trial court entered its judgment resolving the case. The trial court denied McManus's motion for sanctions. It further stated that Rockwell agreed to dismiss the complaint against Huebner and she agreed to dismiss her counterclaims against him. The trial court did not specifically rule on Rockwell's motions to vacate or to amend the pleadings in its entry, but it orally denied the motion in a telephone conference with the parties. Like all its other entries, the trial court's April 28, 2025 judgment did not include any detail regarding facts or legal analysis.

## II. Assignments of Error

{¶ 26} Rockwell timely appeals the judgments of the Lucas County Court of Common Pleas, asserting three assignments of error for review:

> 1. The journal entry granting summary judgment fails to include any factual basis or legal reasoning, precluding any meaningful review by a court of appeals, as required by *Murphy v. Reynoldsburg*.

> 2. The trial court erred in granting summary judgment on the legal malpractice claim as defendants breached the standard of care owed and because the claim was supported by an unchallenged expert opinion.

> 3. The trial court committed an abuse of discretion by orally denying the motion to amend the complaint to include the correct name of the guardian.

{¶ 27} McManus cross-appeals, and asserts as his assignment of error:

> The trial court abused its discretion in failing to hold an evidentiary hearing on cross-appellant's motion for sanctions where it demonstrated "arguable merit."

12.

### III. Analysis

**A. The trial court is not required to include a factual basis or legal reasoning in its entry granting summary judgment.**

{¶ 28} In his first assignment of error, Rockwell argues that the trial court erred when it granted summary judgment without including any findings of fact or legal reasoning. He cites *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992), for the proposition that a trial court must thoroughly examine all the evidence before granting summary judgment.

{¶ 29} In *Murphy*, the trial court admitted to the parties before it, "I haven't read your motion. I haven't read your briefs. So, educate me." *Id.* at 359. It then heard the arguments of the parties and awarded summary judgment to the defendants at the close of their presentation. *Id.* at 357. The Ohio Supreme Court reversed, holding that "Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment." *Id.* at 360.

{¶ 30} The issue in *Murphy* is not present here. The record contains no indication that the trial court failed to examine and consider the materials filed by the parties. This court, therefore, presumes the regularity of the proceedings and that the trial court considered all the appropriate materials.

> A general principle of appellate review is the presumption of regularity, that is, a trial court is presumed to have followed the law unless the contrary is made to appear in the record. Thus, the court of appeals

generally presumes regularity in the proceedings below, and all presumptions will be indulged in support of the validity and correctness of the proceedings below. Also, in appeals, all reasonable presumptions consistent with the record will be indulged in favor of the legality of the proceedings below. The law presumes that the decree or judgment was made upon proper grounds; that the court below applied the law correctly; that a trial judge performed one's duty and did not rely upon anything in reaching a decision upon which one should not have relied; and that the action below was justified.

*State v. Rutledge*, 2025-Ohio-4573, ¶ 84 (6th Dist.), quoting *State v. Phillips*, 2022-Ohio-1262, ¶ 24 (2d Dist.), quoting 5 Ohio Jur.3d, Appellate Review, § 454.

{¶ 31} Furthermore, whether the trial court considered the appropriate materials is a separate question from whether the trial court's judgment entry must include factual findings and legal reasoning. On that question, "'[i]t is well settled in Ohio that a trial court is not required to issue a written opinion containing findings of fact and conclusions of law when ruling on a motion for summary judgment.'" *Priore v. State Farm Fire & Casualty Co.*, 2014-Ohio-696, ¶ 11 (8th Dist.), quoting *Solomon v. Harwood*, 2011-Ohio-5268, ¶ 61 (8th Dist.); *see also* Civ.R. 52 ("Findings of fact and conclusions of law required by this rule and by Civ.R. 41(B)(2) and Civ.R. 23(G)(3) are unnecessary upon all other motions including those pursuant to Civ.R. 12, Civ.R. 55, and Civ.R. 56."); *State ex rel. Parker Bey v. Byrd*, 2020-Ohio-2766, ¶ 19 (in a public records mandamus action, "a court of appeals is not required to issue findings of fact and conclusions of law when ruling on a summary-judgment motion"); *Essig v. Blank*, 2021-Ohio-2602, ¶ 21 (2d Dist.); *Natl. Collegiate Student Loan Trust 2005-3 v. Dunlap*, 2018-Ohio-2701, ¶ 46 (4th Dist.); *Natl. City Real Estate Servs. L.L.C. v. Shields*, 2013-Ohio-2839, ¶ 42 (11th Dist.).

14.

**{¶ 32}** Finally, this court reviews the award of summary judgment de novo, without any deference to the trial court's reasoning. *Koler v. Grand Harbour Condo. Owners Assn.*, 2014-Ohio-1299, ¶ 5 (6th Dist.), citing *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). As such, a failure by the trial court to provide its factual determinations or legal reasoning in its entry granting summary judgment, even if it were error, would be harmless.

**{¶ 33}** Accordingly, Rockwell's first assignment of error is not well-taken.

**B. Summary judgment to McManus is appropriate where the claim is barred by res judicata.**

**{¶ 34}** In his second assignment of error, Rockwell argues that the trial court erred in awarding summary judgment to McManus.

**{¶ 35}** Applying the de novo standard of review, summary judgment should be upheld when there is no issue of material fact, the moving party is entitled to judgment as a matter of law, and when viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only come to one conclusion that is adverse to the moving party. *Koler* at ¶ 5, quoting *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978); Civ.R. 56(C).

**{¶ 36}** In his brief, in addition to arguing his claim of legal malpractice, Rockwell also asserts that the case involves allegations of breach of fiduciary duty. The two claims are similar. "To establish a cause of action for legal malpractice, a plaintiff must show 'the existence of an attorney-client relationship giving rise to a duty, a breach of that

15.

duty, and damages proximately caused by that breach." *Ratonel v. Roetzel & Andress, L.P.A.*, 2016-Ohio-8013, ¶ 6, quoting *New Destiny Treatment Ctr., Inc. v. Wheeler*, 2011-Ohio-2266, ¶ 25; *Millican v. Albrechta & Coble, Ltd.*, 2018-Ohio-776, ¶ 15 (6th Dist.) ("The elements of legal malpractice are: (1) the attorney owed a duty or an obligation to the plaintiff; (2) there was a breach of that duty or obligation and the attorney failed to conform to the standard required by law; and (3) there is a causal connection between the conduct complained of and the resulting damage or loss."). Likewise, to establish a breach of fiduciary duty, the plaintiff must "establish the existence of a fiduciary duty, breach of that duty, and injury proximately caused by the breach." *Wall-Meiring v. Gibson*, 2023-Ohio-664, ¶ 57 (6th Dist.), quoting *Newcomer v. Natl. City Bank*, 2014-Ohio-3619, ¶ 9 (6th Dist.); *Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988).

{¶ 37} Responding to McManus's argument below that no attorney-client relationship existed, Rockwell for the first time argues that liability to third parties for legal malpractice is appropriate where the lawyer acted "fraudulently or maliciously," citing *Shoemaker v. Gindlesberger*, 2008-Ohio-2012, ¶ 11 (necessity of privity for a third-party claim of legal malpractice "may be overridden if special circumstances such as 'fraud, bad faith, collusion or other malicious conduct' are present").

{¶ 38} Aside from his argument attempting to establish third-party liability for a legal malpractice claim, Rockwell does not address any of McManus's other procedural defenses such as res judicata or the statute of limitations. Instead, he focuses on

16.

relitigating the details of the various expenditures that were reimbursed and submitted to the probate court in the guardianship proceedings.

{¶ 39} Upon review, it is not necessary to delve into the issues surrounding the merits of the various expenditures of the guardianship. Nor is it necessary to determine whether Rockwell can establish third-party liability for legal malpractice or even whether the complaint asserted a cause of action for breach of fiduciary duty against McManus. This is so because, in this case, the claims are barred by res judicata.

{¶ 40} "The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 2007-Ohio-1102, ¶ 6; *Banks v. Toledo*, 2023-Ohio-1906, ¶ 29 (6th Dist.). "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *Id.* "Where a claim could have been litigated in the previous suit, claim preclusion also bars subsequent actions on that matter." *Id.* "Issue preclusion, on the other hand, serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies." *Id.* at ¶ 7.

{¶ 41} Here, Rockwell's claims—whether styled as legal malpractice or breach of fiduciary duty—rise and fall on the propriety of McManus's conduct as the guardian in approving expenditures from Lauer's estate. The issue of whether those expenditures were made in the best interest of Lauer was determined by the probate court in its review

17.

of the guardian's accountings. *See* R.C. 2109.32 ("At the hearing upon an account required by section 2109.302 . . . the court shall inquire into, consider, and determine all matters relative to the account and the manner in which the fiduciary has executed the fiduciary's trust, including the investment of funds, and may order the account approved and settled or make any other order that the court considers proper.").

{¶ 42} As an interested party, Rockwell had the opportunity to file exceptions to the accountings, which he did relative to McManus's third accounting. R.C. 2109.33. Those exceptions were fully heard and overruled by the magistrate. Rockwell did not object to the magistrate's decision and it was adopted by the probate court as its judgment on May 17, 2021. As to the other accountings, Rockwell did not file any exceptions, and they were approved by the probate court. The orders of the probate court approving the accountings have the effect of a judgment. R.C. 2109.35. Rockwell did not appeal any of the probate court's judgments approving the accountings, nor did he attempt to vacate those judgments pursuant to the procedures in R.C. 2109.35.

{¶ 43} In *In re Guardianship of Skrzyniecki*, 118 Ohio App.3d 67 (6th Dist. 1997), this court examined the effect of a failure to file exceptions to an accounting on subsequent claims that the guardian breached his fiduciary duty and negligently administered the ward's estate. In that case, the ward resided at a nursing home. As the ward's finances were exhausted, the guardian applied for Medicaid to cover the continued costs of the nursing home services. The Medicaid application was delayed, however, due to the discovery of a small amount of corporate stock that was previously

18.

unknown to the guardian. Because of this delay, the ward did not pay the nursing home for approximately nine months, incurring a debt of over $20,000. *Id.* at 68-69.

{¶ 44} The nursing home filed a motion to remove the guardian and to surcharge the bonding company for the debt. It alleged that the guardian breached his fiduciary duty and negligently administered the ward's estate by failing to qualify the ward for Medicaid in a timely manner. *Id.* at 72. Two months after this motion was filed, the guardian filed the final accounting of the ward's estate. No exceptions to the final accounting were filed. Prior to reviewing the motion to remove the guardian and to surcharge, the probate court approved the final accounting of the guardianship, specifically finding that "the final account was just and correct and in conformity to law and that 'said fiduciary has fully and lawfully administered the ESTATE and has distributed the assets thereof in accordance with the LAW as shown in said account.'" *Id.* at 70. The probate court then considered the motion to remove the guardian and to surcharge the bonding company and found it not well taken, reasoning that the final accounting had been approved, no exceptions had been filed to it, and the nursing home had not provided any proof of the debt. *Id.*

{¶ 45} On appeal, the nursing home argued that it was not required to file exceptions to the final accounting to protect its right to challenge the administration of the estate. *Id.* This court disagreed. It reasoned that the probate court's review of the final accounting required it to "determine whether the guardian had fully and lawfully, *i.e.*, non-negligently, administered the ward's estate." *Id.* at 72. This court held, "in

19.

order to preserve its right to challenge the guardian's administration of the estate of the ward, appellant was required to file exceptions to the guardian's final account. Because appellant did not file such exceptions, the lower court's approval of the final account was *res judicata* on the issue of whether the guardian properly administered the ward's estate." *Id.*

{¶ 46} *Skrzyniecki* is applicable here. When it approved McManus's accountings, the probate court was required to "inquire into, consider, and determine all matters relative to the account and the manner in which the fiduciary has executed the fiduciary's trust, including the investment of funds . . .." R.C. 2109.32. Upon reviewing the accountings, it determined "said account, in all respects, just and correct and in conformity to law." The court further found in the final accounting that "the said fiduciary has fully and lawfully administered the estate and has distributed the assets thereof in accordance with the law." Rockwell did not file an exception to the final accounting, or to any of the accountings other than the third one. And when his exception to the third accounting was denied by the magistrate, he did not file objections to the magistrate's decision with the probate court. Rockwell also did not appeal any of the probate court's judgments approving the accountings.

{¶ 47} Res judicata "bars a party from relitigating the same issue or claim that has already been decided in a final, appealable order or a valid, final judgment in a prior proceeding and could have been raised on appeal in that prior proceeding." *AJZ's Hauling, L.L.C. v. TruNorth Warranty Programs of N. America*, 2023-Ohio-3097, ¶ 15.

20.

{¶ 48} In this case, because Rockwell did not file exceptions or appeal the probate court's judgments approving the accountings, res judicata prevents him from relitigating McManus's performance as guardian regarding whether he appropriately approved expenditures.

{¶ 49} Rockwell's second assignment of error, therefore, is not well-taken.

**C. The trial court did not abuse its discretion when it denied a motion to amend the complaint where the amendment would be futile.**

{¶ 50} In his third assignment of error, Rockwell argues that the trial court abused its discretion when it denied his motion to amend the complaint to name McManus as the guardian and to assert the breach of fiduciary claim against him.

{¶ 51} Rockwell relies on Civ.R. 15(B), which applies to amendments to conform to the evidence.[1]  It provides, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."  Civ.R. 15(B).  This court has held that "issues raised for the first time in summary judgment proceedings could constitute an amendment to prior pleadings under Civ.R. 15(B) if the issue was 'implicitly tried' by the parties." *Lukasiewicz v. Piotrowicz*, 2024-Ohio-2754, ¶ 13 (6th Dist.), citing *Staniec v. Rosiar*, 2021-Ohio-2142, ¶ 23 (6th Dist.).  The trial court's grant or denial of an amendment to a pleading to include an issue tried by implied consent is reviewed for an abuse of

---

[1] He also cites Civ.R. 15(C), which defines when the amendments relate back to the date of the original pleading.

discretion. *Id.*, citing *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 46 (1983). An abuse of discretion connotes that the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 52} Here, McManus expressly *did not consent* to trying the issue of whether he breached a fiduciary duty. After Rockwell raised the matter in his opposition to the motion for summary judgment, McManus directly stated in his reply that the cause of action was not pled, did not exist, and would not be addressed. The trial court, therefore, did not abuse its discretion in denying Rockwell's Civ.R. 15(B) motion to amend the complaint.

{¶ 53} Alternatively, even if Rockwell moved to amend the complaint pursuant to Civ.R. 15(A), which permits a party to amend a pleading with leave of court, the trial court's denial was not an abuse of discretion because the amendment would have been futile. *See State ex rel. McDougald v. Greene*, 2020-Ohio-3686, ¶ 20 (denying motion for leave to amend the complaint "because the amendment would be futile"); *Darby v. A-Best Products Co.*, 2004-Ohio-3720, ¶ 36-37 (trial court did not abuse its discretion in refusing to allow amendment to the complaint to add new party defendants where the claims against them are "wholly futile").

{¶ 54} As with his claim for legal malpractice, Rockwell's claim for breach of fiduciary duty is based on the premise that McManus improperly submitted receipts to the probate court and sought approval for expenditures that did not benefit Lauer. This

22.

issue has been conclusively decided by the probate court in its judgments approving the accountings, and Rockwell did not appeal from any of those judgments. As discussed in his second assignment of error, res judicata therefore bars Rockwell from pursuing this issue in his proposed claim for breach of fiduciary duty. As such, his proposed claim of breach of fiduciary duty is futile. The trial court did not abuse its discretion in denying his motion to amend the complaint.

{¶ 55} Accordingly, Rockwell's third assignment of error is not well-taken.

**D. The trial court abused its discretion when it denied McManus's motion for sanctions without a hearing.**

{¶ 56} Turning to McManus's cross-appeal, he argues that the trial court abused its discretion when it denied his motion for sanctions under R.C. 2323.51 and Civ.R. 11 without holding a hearing.

{¶ 57} This court reviews a trial court's ruling on a request for sanctions under R.C. 2323.51 and Civ.R. 11 for an abuse of discretion. *Smith v. Anderson*, 2023-Ohio-108, ¶ 11 (6th Dist.), citing *State ex rel. Davis v. Metzger*, 2016-Ohio-1026, ¶ 10; *Gallagher v. AMVETS Post 17*, 2009-Ohio-6348, ¶ 32 (6th Dist.). "Further, an evidentiary hearing on a motion for sanctions under either R.C. 2323.51 or Civ.R. 11 is required only where a motion demonstrates 'arguable merit.'" *Id.* at ¶ 12, citing *Gitler v. Cadle Co.*, 2004-Ohio-220, ¶ 13 (6th Dist.). "In cases where the court has sufficient knowledge of the circumstances for the denial of the requested relief, it need not waste judicial resources on hearings that are 'perfunctory, meaningless, or redundant.'" *Gitler*

23.

at ¶ 13, quoting *Smith v. Baumgartner*, 2002-Ohio-232, ¶ 24 (6th Dist.). Whether a hearing should be held on a motion for sanctions "is within the sound discretion of the trial court." *Id.* at ¶ 14, citing *Ohio Dept. of Adm. Servs. V. Robert P. Madison Internatl., Inc.*, 138 Ohio App.3d 388, 399 (10th Dist. 2000).

{¶ 58} Under R.C. 2323.51(B)(1), "any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal." R.C. 2323.51(A)(2)(a) defines that conduct is frivolous where

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51 employs an objective standard in determining whether sanctions may be imposed for frivolous conduct. *Smith v. Anderson* at ¶ 16, citing *Stone v. House of Day Funeral Serv., Inc.*, 140 Ohio App.3d 713, 721 (6th Dist. 2000).

24.

**{¶ 59}** In addition, sanctions may be imposed under Civ.R. 11, which provides,

> The signature of an attorney or *pro se* party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or *pro se* party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule.

"In determining whether sanctions are warranted under Civ.R. 11, the relevant inquiry is whether the attorney's actual intent or belief was willful or merely negligent." *Smith v. Anderson* at ¶ 15, citing *Stone* at 721.

**{¶ 60}** Here, McManus identifies three facts in support of his contention that his motion for sanctions has arguable merit.

**{¶ 61}** First, despite Rockwell knowing that he was never the attorney for Rockwell or the Trust, paragraph nine of the complaint states that McManus "acted as legal counsel and guardian for the [Trust] in Lucas County Probate Court . . .."

**{¶ 62}** Second, even if Rockwell had acknowledged that no attorney-client relationship existed, McManus argues that the complaint for third-party legal malpractice could only have been brought if Rockwell was in privity with Lauer or if there was fraud or malice. In support, he cites *Scholler v. Scholler*, 10 Ohio St.3d 98 (1984), paragraph one of the syllabus, in which the Ohio Supreme Court held, "An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on

25.

behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously." He contends that Rockwell's attorney should have known that as a beneficiary of the Trust subject to complete defeasance he was not in privity with Lauer or the guardianship. Furthermore, Rockwell did not attempt to demonstrate fraud or malice in the proceedings below, waiting to raise it for the first time on appeal.

{¶ 63} Third, and finally, McManus argues that Rockwell should have known that the issue of his performance as guardian was fully and fairly litigated in the probate court, and res judicata barred Rockwell from bringing his claims in a new action. McManus cites *Cincinnati Ins. Co. v. Oancea*, 2005-Ohio-4872, ¶ 22 (6th Dist.), in which this court recognized that "filing a claim that is clearly barred by res judicata meets the definition of frivolous conduct in R.C. 2323.51(A)(2)(a)(ii)." In *Oancea*, this court held that "initiating a claim barred by res judicata is ordinarily unwarranted," and remanded the matter to the trial court to conduct a hearing to determine whether sanctions should be imposed. *Id.* at ¶ 24-25.

{¶ 64} Considering the above, McManus has demonstrated that his motion for sanctions has arguable merit. The trial court, therefore, erred when it denied McManus's motion without a hearing. *See Id.* This court does not, however, make any finding regarding whether sanctions are ultimately appropriate in this matter.

{¶ 65} Accordingly, McManus's assignment of error on cross-appeal is well-taken.

26.

## IV. Conclusion

**{¶ 66}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. The award of summary judgment to McManus on Rockwell's claims is affirmed. The trial court's judgment denying McManus's motion for sanctions is reversed and the matter is remanded to the trial court for a hearing on the motion. Rockwell is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed in part,
and reversed in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J. _____

                    JUDGE

Myron C. Duhart, J. _____

                    JUDGE

Charles E. Sulek, P.J. _____
CONCUR.                     JUDGE

> This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.